458 So.2d 369 (1984)
SAND KEY ASSOCIATES, LIMITED, Appellant,
v.
The BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND OF the STATE OF FLORIDA, Appellee.
No. 84-960.
District Court of Appeal of Florida, Second District.
October 26, 1984.
*370 Richard J. Salem, Tampa, and William J. Kimpton of Case, Kimpton & Burke, P.A., Clearwater, for appellant.
John W. Williams, Asst. Gen. Counsel, Dept. of Natural Resources, Tallahassee, for appellee.
RYDER, Chief Judge.
We are concerned here with determining the owner of accreted land and the constitutionality of section 161.051, Florida Statutes (1981). In 1974, the state of Florida constructed a jetty on oceanfront property on Sand Key in Pinellas County, Florida. Sand Key Associates, Limited (Sand Key) also owns oceanfront property approximately one-half mile south of the jetty. After the construction of the jetty, there was a gradual build-up of land because of accretion on Sand Key's property. The accreted land now exceeds five acres. The parties agree that the accretion is due to the erection of the jetty and that Sand Key neither participated in nor contributed to the jetty project. The jetty was not constructed on Sand Key's property.
Both parties claim ownership of the accreted land. The state bases its claim on section 161.051, Florida Statutes (1981), which provides as follows:
Coastal construction by persons, firms, corporations or local authorities.  Where any person, firm, corporation, county, municipality, township, special district, or any public agency shall construct and install projects when permits have been properly issued, such works and improvements shall be the property of said person, firm, corporation, county, municipality, township, special district, or any public agency where located, and shall thereafter be maintained by and at the expense of said person, firm, corporation, county, municipality, township, special district, or other public agency. No grant under this section shall affect title of the state to any lands below the mean high-water mark, and any additions or accretions to the upland caused by erection of such works or improvement shall remain the property of the state if not previously conveyed. The state shall in no way be liable for any damages as a result of erections of such works and improvements, or for any damages arising out of construction, reconstruction, maintenance, or repair thereof, or otherwise arising on account of such works or improvements.
Sand Key bases its claim on the common law rule as applied in Board of Trustees of the Internal Improvement Fund v. Medeira Beach Nominee, Inc., 272 So.2d 209 (Fla.2d DCA 1973), that the upland riparian or littoral[1] owner has a vested right to all accretion, whether naturally or artificially caused.
The trial court entered a partial summary judgment for the state, quieted title to the accreted land in the state, enjoined Sand Key from possessing the disputed property, and declared section 161.051 to be constitutional. The trial court ruled that pursuant to section 161.051 the state holds title to all accretion to the upland owned by any person when the accretion results from works or projects described in the statute. We reverse.
At common law littoral or riparian rights included the right of ingress and egress from the water to the land and the right in the land growing out of accretion or reliction. Such property rights are vested and cannot be taken away without just *371 compensation. Thiesen v. Gulf, F. & A. Ry. Co., 75 Fla. 28, 78 So. 491 (1917).
This court in Medeira Beach Nominee, Inc. applied the common law rule and held that a strip of accreted land became the property of the upland littoral owner even where the accretion was the result of a lawful exercise of police power by a municipality to prevent beach erosion. We expressly did not consider section 161.051 in that case because the erosion project at issue began in 1957 while the statute was not enacted until 1965.
Section 161.051 states that any accretions to the upland caused by a work or improvement pursuant to that section shall remain the property of the state. It is unclear whether the legislature intended for section 161.051 to apply only to the upland owner of the improved property or also to the upland littoral owners whose property becomes accreted because of the improvement.
To the extent that section 161.051 applies to other upland littoral owners who neither participated in nor contributed to the improvement, the statute is in derogation of the common law and must be strictly construed. The presumption is that no change in the common law is intended unless the statute explicitly so states. Inference and implication cannot be substituted for clear expression. Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977).
Section 161.051 does not explicitly state that it applies to all upland littoral owners. Therefore, construing the statute strictly, we hold that it applies only to the upland owner of the improved property. Section 161.051 does not affect Sand Key's vested right to accretion on its property.
We approve the trial court's ruling that section 161.051 is constitutional but reverse the remainder of the order. The lower court's order effectively divested Sand Key of its littoral rights without compensation. We hold that the disputed five acres of accreted property, all future accretions on the property and all property rights incident thereof belong to Sand Key. The injunction prohibiting Sand Key from possessing its property is dissolved.
Recognizing that the intent of section 161.051 is unclear, we certify the following question to the Florida Supreme Court as one of great public importance:
PURSUANT TO SECTION 161.051, FLORIDA STATUTES (1981), IS THE STATE ENTITLED TO ACCRETED LAND OF ONLY THE UPLAND OWNER OF THE IMPROVED PROPERTY OR TO THE ACCRETED LAND OF ALL UPLAND LITTORAL OWNERS, WHETHER OR NOT THEY PARTICIPATED IN OR CONTRIBUTED TO THE IMPROVEMENT?
REVERSED.
CAMPBELL, Judge, concurring with opinion in result only.
While I concur with the result reached by the majority, I interpret section 161.051 somewhat differently. The statute must be considered in its entirety to apprehend what I perceive to have been the intent of the legislature. The first sentence of section 161.051 operates to vest title to any works or improvements provided for therein in the entity which was permitted to construct such works or improvements. I conclude that the second sentence was enacted only to ensure that the state retains ownership of lands below the mean high-water mark and, where the state owns upland of the mean high-water mark, any additions or accretions to the state-owned upland.
In other words, the grant of title to the works or improvements to the entity constructing that work or improvement does not carry with it any additions or accretions. Therefore, where the state owned the upland and the land below the mean high-water mark, the title to the upland, the land below the mean high-water mark, and any additions or accretions shall, in the words of the statute, "remain the property of the state if not previously conveyed." The grant of title to the constructing entity *372 carries no more than title to the improvement itself. Apparently, this grant is provided so that there will be no dispute over the requirement of the statute that the constructing entity shall, at its expense, maintain the works or improvements. Where the upland owner is not the state, nor the entity constructing the work or improvement, the additions or accretions become the property of the upland owner. Therefore, what may have been state owned lands below the mean high-water mark as a result of the additions or accretions, become the property of the upland owner. The state would continue to own the land that is below the mean high-water mark after the additions or accretions. The result of the additions or accretions is to establish a new mean high-water mark.
LEHAN, J., concurs.
CAMPBELL, J., concurring with opinion in result only.
NOTES
[1] While the rights incident to ownership of land abutting a sea, lake, or pond are commonly referred to as riparian rights, they are technically littoral rights. Riparian rights are those incident to ownership of land contiguous to and abutting flowing, navigable waters such as streams or rivers. Gillilan v. Knighton, 420 So.2d 924 (Fla.2d DCA 1982).