518 So.2d 315 (1987)
AMERICAN MUTUAL INSURANCE COMPANY, Appellant,
v.
Jacob DECKER, Jr., Appellee.
VINCO PLASTERING & DRYWALL, and Florida Employers' Insurance Service Corporation, Appellants,
v.
William P. MAHAN, M.D., and W.P. Mahan, M.D., P.A.; and Joe Harris and Linda Harris, Appellees.
UNDERWRITERS' ADJUSTING CO./THE FAMILY MART, Appellants,
v.
Aaron SCHNEIDER, M.D., and A. Schneider, M.D., P.A., Humana, Inc., D/B/a Sunbay Community Hospital and Sunbay Community Medical Staff, Inc., Florida Patients Compensation Fund, and Billy Joe Hicks, Appellees.
FLORIDA POWER CORPORATION, Appellant,
v.
HUMANA OF FLORIDA, INC., d/b/A Sun Bay Community Hospital; Sun Bay Community Hospital Medical Staff, Inc.; Aaron Schneider, M.D.; A. Schneider, M.D., P.A.; Florida Patients Compensation Fund; Laurence J. Reilly and Mary Ann Reilly, Husband and Wife, Appellees.
Nos. 86-851, 86-1717, 86-2774 and 86-2866.
District Court of Appeal of Florida, Second District.
December 4, 1987.
Rehearing Denied January 12, 1988.
*316 Kenneth L. Olsen of Miller & Olsen, Tampa, for appellant American Mut. Ins. Co.
Jonathan L. Alpert and Peter J. Grilli of Alpert, Josey, Freemon & Grilli, Tampa, for appellee Jacob Decker, Jr.
H. George Kagan of Miller, Hodges, Kagan & Chait, P.A., Deerfield Beach, and G.W. Jacobs of Harkavy, Moxley, Mitchell, Stewart & Jacobs, P.A., Sarasota, for appellants Vinco Plastering & Drywall, and Florida Employers' Ins. Corp.
James C. Blecke and Susan S. Lerner, Miami, for appellees Mahans.
No appearance for appellees Harrises.
Peter H. Dubbeld of Peter H. Dubbeld, P.A., St. Petersburg, for appellants Underwriters' Adjusting Co./The Family Mart.
Nelly N. Khouzam of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellees Aaron Schneider, M.D., and A. Schneider, M.D., P.A.
A. Broaddus Livingston and Jeffrey Lewis of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, for appellees Humana, Inc., d/b/a Sunbay Community Hosp. and Sunbay Community Hosp. Medical Staff, Inc.
No appearance for Hicks.
Robert L. Dietz and Kevin S. Cannon of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellant Florida Power Corp.
Rodney W. Morgan of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, for appellee Florida Patients Compensation Fund.
*317 No appearance for appellees Laurence J. Reilly and Mary Ann Reilly, husband and wife.
FRANK, Judge.
The above-styled matters were consolidated for consideration and disposition because of a common question of law stemming from the interaction of section 768.50, the statute regulating collateral sources of benefits in medical malpractice litigation, and section 440.39, the statute permitting workers' compensation payments to be recovered from a third party tortfeasor. In each of these cases the appellants  employers and workers' compensation carriers  attempted to enforce liens in medical malpractice actions. The claimed acts of medical negligence occurred during treatment following industrial accidents, and each appellant sought to recover its extended payment of workers' compensation benefits flowing from the alleged malpractice. The decision of our sister court in American Motorists Insurance Co. v. Coll, 479 So.2d 156 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 829 (Fla. 1986), was followed by trial courts in Hillsborough, Pinellas, and Polk counties; each trial court rejected the effort to enforce the statutory subrogation right by striking the notice of lien filed in the action against the medical care provider. At the time these proceedings were separately before the trial courts, Coll was the sole authority offering guidance within the subject area.[1] Consistent with our opinion in Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982), the trial courts obediently followed Coll. We, now, however, announce and explain our disagreement with Coll. We reverse in each instance.
Turning first to Coll, we, as well as the parties before us, agree with the third district that workers' compensation benefits are a "collateral source" within the meaning of section 768.50(2)(a)(2), Florida Statutes (1983). We decline to embrace the result in Coll, however, because we are persuaded that the third district failed to accord section 768.50 its full significance. We initiate our inquiry with section 768.50(1). It provides that the amount of damages awarded against a health care provider shall be reduced by the total of all amounts paid to the plaintiff in the absence of a subrogation right in the collateral source provider. Moving to section 768.50(4), the following underscored portion of which was not referred to in Coll, it is evident that:

Unless otherwise provided by law, no insurer or any other party providing collateral source benefits as defined in subsection (2) shall be entitled to recover the amounts of any such benefits from the defendant or any other person or entity, and no right of subrogation or assignment of rights of recovery shall exist.
We find nothing in Coll to explicate why section 768.50(4)'s prefatory words are meaningless. In our view those words are critical and control the outcome of the present controversies.
For more than forty years Florida has permitted an employee injured in the course of his employment to pursue an independent action against a third-party tortfeasor. See, e.g., Vanlandingham v. Florida Power & Light Co., 154 Fla. 628, 18 So.2d 678 (1944). Within that backdrop, the workers' compensation law, specifically section 440.39, Florida Statutes, expressly encompasses a subrogation right in the provider of workers' compensation benefits. The subrogated self-insured employer or the carrier may file a notice of the payment of benefits in the action initiated by the employee against the tortfeasor. The notice constitutes a lien upon any judgment or settlement, and the employer or carrier can recover one hundred percent of the benefits paid or payable to the employee, with certain exceptions not applicable here. See § 440.39, Fla. Stat. (1983).
The statutory scheme is comprehensive and designed to accomplish an equitable allocation of financial responsibility *318 between and among the plaintiff and the defendant in the medical malpractice action and the collateral source. From the analysis which follows, it is readily seen that the legislature left to the collateral source provider the responsibility to protect itself from inequitable economic loss. Thus, pursuant to section 768.50(1), if the collateral source provider is not accorded a statutory right of subrogation, the judgment recovered by the medical malpractice plaintiff is simply reduced by the amount attributable to the collateral source benefit. The effects flowing from that event are threefold: (1) the plaintiff in the medical malpractice action is properly denied an exaggerated recovery, (2) the collateral source provider does not recoup its payments made to or on behalf of the medical malpractice plaintiff, and (3) the medical malpractice defendant benefits from a reduction in the amount of the judgment. In recognition of consequences (2) and (3), the legislature, in the precise settings before us, granted the collateral source provider an opportunity to curtail unjust financial detriment through the right of subrogation. Thus, the collateral source provider, statutorily endowed with a right of subrogation, may file its notice of lien in the medical malpractice proceeding and recover its payments originating in the workers' compensation claim which were enlarged by reason of the medical negligence; the medical malpractice defendant pays the entire judgment attributable to the post-industrial accident negligence; and the claimant retains only that portion of the negligence judgment for which he has not received benefits under the workers' compensation statute. Coll cannot be squared with the foregoing analysis; if it were followed, the unfairness of consequences (2) and (3) would be assured.
The only arguable issue the appellees have raised in opposition to the conclusion we reach is whether the injuries the claimants allegedly suffered at the hands of the medical providers occurred in the course of each claimant's employment. We conclude that they did. Our reasoning is founded upon the long-standing doctrine that when an injury occurring during the course of employment necessitates treatment, and the treatment either prolongs or exacerbates the original injury, then the aggravation is compensable under the Workers' Compensation Act. City of Lakeland v. Burton, 147 Fla. 412, 2 So.2d 731 (1941); Warwick v. Hudson Pulp and Paper Co., Inc., 303 So.2d 701 (Fla. 1st DCA 1974). The recovery by the self-insured employer or a carrier of the benefits paid as a result of magnification of a work-connected injury by a third party tortfeasor is contemplated by section 440.39, Florida Statutes. Nothing offered us in either the appellees' briefs or oral arguments detracts from our determination that sections 440.39 and 768.50(4) are functionally integrated.
Finally, we note that case No. 86-851, American Mutual v. Decker, 518 So.2d 315 (Fla.App. 2d DCA 1987), involves payments by a carrier pursuant to the Minnesota workers' compensation law. The Minnesota Supreme Court, considering the application of a statute similar to section 440.39 and applying it to facts paralleling those at hand, held:
The Workmen's Compensation Act makes no distinction between the tort of malpractice and any other tort in allowing subrogation to a compensation carrier who is required by law to pay benefits and medical expenses to and for an employee who has received an aggravation of an old injury or additional injury under the circumstances present in the instant case....
Consequently, we ... join the majority, if not all, of the courts in the United States, in holding that there is a right of subrogation under statutes and fact situations similar to the applicable statute and facts in this case. [Footnote omitted.] To rule otherwise would permit double recovery by the employee.
Williams v. Holm, 288 Minn. 371, 181 N.W.2d 107, 109 (1970).
Our analysis has led us to the conclusion that a self-insured employer or carrier, possessing a statutory subrogation right under section 440.39, may file a lien and recover directly from the tort judgment *319 the workers' compensation benefits paid or payable to the employee resulting from the medical negligence. Such a procedure is "expressly provided by law" and is anticipated by the collateral source statute, section 768.50(4).[2] Accordingly, we reverse the trial courts' orders striking the notices of payment of workers' compensation benefits in each of the cases and remand these matters to the appropriate trial court. In so holding we certify that our decision is in direct conflict with that of the third district in Coll.
We reverse and remand for further proceedings consistent with this opinion.
DANAHY, C.J., and LEHAN,[*] J., concur.
NOTES
[1] In the time since the trial courts' decisions, the third district has followed Coll in at least two other instances. Chambers v. Liberty Mutual Insurance Co., 511 So.2d 608 (Fla. 3d DCA 1987); Rosabal v. Arza, 495 So.2d 846 (Fla. 3d DCA 1986).
[2] In 1986 the legislature repealed section 768.50, see Ch. 86-160, § 68, Laws of Florida, and replaced it with section 768.76(4), which provides:

A provider of collateral sources that has a right of subrogation shall have a right of reimbursement from a claimant to whom it has provided collateral sources if such claimant has recovered all or part of such collateral sources from a tortfeasor.
Ch. 86-160, § 55, Laws of Fla., codified at § 768.76, Fla. Stat. (Supp. 1986).
[*] Judge Lehan participated in the decision but did not participate in oral argument.