551 So.2d 522 (1989)
Jennifer UNDERWOOD, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-03558.
District Court of Appeal of Florida, Second District.
September 8, 1989.
Rehearing Denied November 8, 1989.
*523 Robin Gibson of Gibson & Lilly, Lake Wales, for appellant.
Jack E. Farley, Tampa, for appellee.
CAMPBELL, Chief Judge.
This appeal presents the question of whether Florida's Medical Assistance Law mandates that the Department of Health and Rehabilitative Services (HRS) claim one hundred percent of all funds collected by a medical assistance recipient if necessary for reimbursement of medical benefits HRS paid to that recipient. Florida's Medical Assistance Law is created by sections 409.266 through 409.268, Florida Statutes (1987), and is administered by HRS. In this case, appellant, Jennifer Underwood, a medical assistance recipient, was unable to recover the full measure of her damages from third parties. Appellee/HRS argued at trial, as it does on appeal, that it is entitled, as reimbursement for benefits paid, to claim all funds received by a recipient from third parties regardless of the source of the funds and for whatever element of damages those funds are meant to compensate even though the recipient may not have received full compensation for his or her damages. The trial court agreed with appellee and so held. We disagree and reverse.
The facts of this case reveal that appellant, twenty-eight-year-old Jennifer Underwood, was severely injured in an automobile accident on March 2, 1987. As a result of the accident, appellant, a passenger in the automobile, suffered numerous physical injuries, including severe and irreversible brain damage. She is unable to form most words, cannot stand or walk without assistance and cannot control her bodily functions. She will need constant care the rest of her life. At the time of the accident, appellant was divorced from her husband and had primary custody and responsibility for their only child. As a result of the accident, she was subsequently adjudged to be mentally incompetent and appellant's former husband was given custody of their child.
Appellant's financial outlook was gloomy. Appellant's insurance coverage lapsed shortly before the accident and the driver of the car in which appellant was a passenger was uninsured and had no recoverable assets. The driver of the other vehicle *524 involved in the accident was also uninsured. The only insurance available for appellant's benefit, a total of $105,000 in liability and medical payments coverage, was carried by the owner of the automobile in which appellant was riding. The owner's insurance carrier agreed to pay its policy limits. Appellant filed a negligence action against both the driver and the owner of the vehicle in which she was a passenger.
After obtaining all available information on the recoverable assets of the parties, appellant's counsel petitioned for court approval of the $105,000 settlement offered by the owner's insurance carrier. At the time of the hearing for approval of settlement, appellant's medical expenses, without considering the value of attendant care, totaled $165,393.30. The petition for approval of settlement revealed that most of appellant's health care providers had elected to receive Medicaid payments from appellee, HRS, and that appellee had a lien against any settlement proceeds pursuant to the provisions of section 409.266(4)(f). The trial court approved the settlement offer of $105,000, dismissed the negligence action against the third party tort-feasors, and retained jurisdiction for the disposition of outstanding medical claims.
Appellant then petitioned for an equitable distribution of the settlement funds held in trust for payment of appellee's Medicaid lien and stipulated to appellee's intervention in the proceeding. At the subsequent hearing to determine the amount of appellee's entitlement to the settlement proceeds as reimbursement for its Medicaid payments, an attorney specialist in civil litigation testified by affidavit that appellant had a life expectancy of 52.1 years, post-economic damages of approximately $200,000, and future economic damages of approximately $1,389,000. The economic damages included the value of the nursing services gratuitously provided by appellant's mother who accepted the responsibility of caring for appellant and, in doing so, gave up her job, friends, social life and free time. Appellee submitted no counter affidavits and did not contest appellant's expert evaluation of her catastrophic injuries.
Appellee successfully argued to the trial judge that when a recipient such as appellant has recovered in damages sufficient funds to repay HRS in full, Florida's Medical Assistance Law makes no provision for prorating or allocating any sum less than one hundred percent for appellee's reimbursement out of any such recovery by a recipient even though the recipient has not been able to recover from third parties the full measure of her damages. The trial judge accordingly entered a final order directing that appellee be reimbursed for one hundred percent of the Medicaid payments made on behalf of appellant. The amount of Medicaid payments for appellant totaled $55,163.97. Appellant submitted a proposed statement of distribution to the trial court which reflected, before satisfaction of appellee's Medicaid lien, a net recovery to appellant of $77,677.63, after subtracting costs, sales tax and a reduced attorney's fee from the $105,000 settlement. After the trial judge's award to appellee of $55,163.97, appellant's net recovery would be reduced to $22,513.66. Although appellee was entitled to the total of $5,000 from recovered funds that came solely from medical payments coverage, the court erred when, in view of the clear overall intent of Florida's Medical Assistance Law, it failed to apply traditional equitable subrogation principles and prorate or allocate appellee's right to reimbursement for the remaining $50,163.97 of its claim based upon the proportionate amount of total damages appellant was able to recover.
Appellee, without giving due consideration to the overall legislative intent expressed in the Medical Assistance Law, seizes upon a very technical reading of two portions of that statute to support its position which seeks one hundred percent reimbursement of benefits paid regardless of the proportionate amount that appellant's actual recovery bears to her total loss. Appellee's focus and emphasis is directed to the provisions of section 409.266(4)(f) which provide that HRS shall have a lien for "medical assistance paid upon any and all causes of action which accrue to the person *525 to whom care was furnished... ." Appellee's reliance upon section 409.266(4)(f) overlooks the "subrogation" language used throughout the remainder of the Medical Assistance Law where reimbursement to HRS is provided. It also overlooks the general principles of the law as they pertain to security interests that secure an underlying obligation. The creation or existence of the security interests does not create, add to or subtract from the amount of the underlying obligation. A lien or any other security is created or obtained simply to secure the underlying obligation. Therefore, section 409.266(4)(f) does not create in behalf of HRS a right to an additional amount of reimbursement other than is provided elsewhere in the Medical Assistance Law.
Appellee also bases its argument for one hundred percent recovery on the language in section 409.266(4)(b), that the department "shall recover to the fullest extent possible the amount of all medical assistance payments made on behalf of the recipient." That argument for total reimbursement similarly ignores the other language of the statute which characterizes the remedy for reimbursement to HRS as one based upon the concept of subrogation. § 409.266(4). See also Smith v. Alabama Medicaid Agency, 461 So.2d 817 (Ala. Civ. App. 1984); White v. Sutherland, 92 N.M. 187, 585 P.2d 331 (Ct.App. 1978), cert. denied, 92 N.M. 79, 582 P.2d 1292 (1978).
A close reading of the clear language of the pertinent parts of section 409.266(4) will conclusively show that HRS is to be reimbursed for medical assistance payments in accord with general principles of subrogation and limited by the amount and type of payments a recipient receives from third parties:
(4)(a) Third-party coverage for medical services shall be primary coverage and shall be exhausted before any payment authorized under this section shall be made on the behalf of any person eligible for services under this section.
(b) A public assistance applicant or recipient shall inform the department of any rights he has to third-party payments for medical services. The department shall automatically be subrogated to any such rights the recipient has to third-party payments and shall recover to the fullest extent possible the amount of all medical assistance payments made on the behalf of the recipient. Recovery of such payments shall be collected directly from:
1. Any third party liable to make a medical benefit payment to the provider of the recipient's medical services or to the recipient under the terms of any contract, settlement, or award;
2. The recipient, if he has received third-party payment for medical services provided to him; or
3. The provider of the recipient's medical services if third-party payment for medical services has been recovered by the provider.
(c) A public assistance applicant or recipient who receives medical care for which the department may be obligated to pay shall be deemed to have made an assignment to the department of any right such person has to any payments for such medical care from a third party, up to the amount of medical assistance paid by the department.
... .
(e) The department may, in order to enforce its subrogation rights under this section, institute, intervene in, or join any legal proceeding against any third party against whom recovery rights arise. No action taken by the department shall operate to deny the recipient's recovery for that portion of his damages not subrogated to the department, and no action of the recipient shall prejudice the subrogation rights of the department.
(f) When the department provides, pays for, or becomes liable for medical care, it shall have a lien for the amount of medical assistance paid upon any and all causes of action which accrue to the person to whom care was furnished, or to his legal representatives, as a result of sickness, injury, disease, disability, or death, due to the liability of a third party which necessitated the medical care. The department shall have 1 year from *526 the date when the last item of medical care relative to a specific accident or spell of illness was paid in which to file its verified lien statement, and the statement shall be filed with the clerk of the circuit court in the recipient's county of residence. The verified lien statement shall contain the name and address of the person to whom medical care was furnished; the date of injury; the name and address of the vendor or vendors furnishing medical care; the dates of the service; the amount claimed to be due for the care; and, to the best knowledge of the department, the names and addresses of all persons, firms, or corporations claimed to be liable for damages arising from the injuries. The department's failure to file a lien shall not affect the department's subrogation rights provided in paragraph (b).
(g) In recovering any payments in accordance with this subsection, the department is authorized to make appropriate settlements.

(Footnote omitted, emphasis supplied.)
Finally, the general equitable principles of subrogation are discussed by this court in Rubio v. Rubio, 452 So.2d 130 (Fla. 2d DCA 1984). The general rule is that, in the absence of a waiver to the contrary, one is not entitled to be subrogated to the rights of an injured party for damages when that injured party has been required to settle his claim for damages for less than its worth because of the limited financial responsibility of the responsible tort-feasor. That broad rule denying any subrogation until full recovery by the injured party has been partially waived or modified by the Florida Medical Assistance Law. Under that law, HRS is entitled to a lien against and to seek reimbursement from amounts received by a medical assistance recipient from third parties. However, that amount to which HRS is entitled should be determined in each case on a pro-rata or proportionate basis according to what percentage of the total damages sustained is recovered by the medical assistance recipient and what percentage of those damages should equitably be characterized as a recovery for past medical services or expenses.
We therefore reverse the order of the trial court which directed that appellee recover its total claim. On remand, the amount appellee should be entitled to as reimbursement shall be determined in accordance with this opinion.
Reversed and remanded.
LEHAN and HALL, JJ., concur.