# UNDERWOOD v FIFER, et al.

## Case No. 88-35-G

Tenth Judicial Circuit, Highlands County

November 8, 1991

## APPEARANCES OF COUNSEL

**Robin Gibson, Esquire, Mark H. Smith, Esquire,** Law Offices of Gibson and Lilly, for plaintiff.

**Richard L. Rogers, Esquire,** Counsel, Medicaid Third Party, for intervenor, Department of Health and Rehabilitative Services.

## OPINION OF THE COURT

J. DAVID LANGFORD, Circuit Judge.

THIS CAUSE has come before the Court upon remand from the District Court of Appeal, Second District, in *Underwood v Department of Health and Rehabilitative Services,* 551 So.2d 522 (Fla. 2d DCA 1989) (hereinafter "Underwood"), upon the motion of Plaintiff

JENNIFER UNDERWOOD for the remedy of equitable distribution, and upon the motions of Intervenor, the STATE OF FLORIDA, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES (the "Department" or "State") for full statutory recovery and for declaratory relief. For the reasons set forth below, we grant the Department full recovery of the amount paid as medical assistance on behalf of Jennifer Underwood by Florida Medicaid, in the amount of $66,878.40, but because the Department has agreed to hold Plaintiff Underwood harmless for amounts in excess of $7,643.05, Plaintiff is held harmless as to amounts in excess of such amount, and the Department shall receive $7,643.05 from the proceeds of this case.

The facts of the case are not in dispute. Insurance available for Plaintiff's benefit totaled $105,000, of which $5,000 is available from medical pay coverage, and $100,000 is available from liability coverage. In the order dated November 21, 1988, this Court ruled that the Department was entitled to recover $55,163.97, the amount of medical assistance the Department had paid at that date as medical benefits on behalf of Plaintiff. The Department continued to pay for Plaintiff's medical care through May 24, 1989, in amounts totaling $66,878.40. On June 29, 1989, the Department filed a lien for $66,878.40 in the Official Records of Polk County, Book 2755, Pages 0792 through 0795. The total damages resulting from Plaintiff's injuries were valued at $3,000,000.

On appeal, in their briefs, both parties presented arguments related the Department's statutory subrogation rights under § 409.266(4)(b), Fla. Stat. (now repealed and superseded). Although briefly mentioned, no issue on appeal was addressed to either the statutory assignment or lien, the Department's other two statutory rights under the former Medicaid third-party liability provision (respectively "TPL" and "former TPL provision") of the medical assistance statute, § 409.266(4), Fla. Stat. (superseded on July 3, 1990 by act of the legislature in 1990, Ch. 90-295, § 33 [as well as Ch. 90-232, § 4, effective October 1, 1990], as amended in 1991, Ch. 91-282, §§ 30 and 38, eff. June 5, 1991, presently §§ 409.901 and 409.910, Fla. Stat.), although arguments were made by the Department as to assignment and lien in post-opinion motions.

In addition to amounts from liability recovery, discussed below, the *Underwood* opinion held that the Department was entitled to full recovery of funds that came solely from medical payments coverage, $5,000 in this case. 551 So.2d at 524.

As to recovery from liability coverage, the *Underwood* case was

200

determined on the basis of the Department's statutory subrogation right, to which the appellate court applied to state recovery the equitable remedy of equitable prorata distribution in a manner similar to principles of equitable distribution used to reduce recovery pursuant to subrogation rights of insurers that provide workers compensation coverage.

The former TPL provision of the medical assistance (i.e., Medicaid) statute was superseded on July 3, 1990 by the Medicaid Third-Party Liability Act (the "MTPLA"), § 409.2665 (Supp. 1990) (session law cited above). On June 5, 1991, § 409.2665, Fla. Stat. (Supp. 1990) was amended and renumbered §§ 409.901 and 409.910, Fla. Stat. by Ch. 91-282, §§ 30 and 38, Laws of Fla. The MTPLA, Title XIX of the Social Security Act (hereinafter "SSA") (especially SSA §§ 1902(a)(25), 1902(a)(45), and 1912 (42 U.S.C. §§ 1396a(a)(25), 1396a(a)(45), and 1396k)), and federal regulations (42 C.F.R. §§ 433.135-433.154) govern recovery of reimbursement by the state Medicaid agency in Florida.

 The Florida medical assistance statutes, §§ 409.901-409.920, as enacted in Ch. 91-282, Laws of Fla., including the MTPLA, and their respective predecessor statutes, are part of a complex state and federal regulatory framework. The overall intent of the medical assistance statutes is set out at the beginning of Title XIX of the SSA at § 1901 (42 U.S.C. § 1396). The intent or purpose is to enable

each State, as far as is practicable under the conditions for each State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care. . . . 42 U.S.C. § 1396.

Medical assistance is available, however, only when the resources of an individual are insufficient. Medicaid is the final safety net for medical care for the indigent, the last to pay, and, with the exception of Medicare, the first to be repaid if third-party resources later become available. State and federal costs of providing medical assistance are rising sharply. Both Congress and the Florida Legislature have established a framework to limit costs to the public treasury when third parties are, or may be liable. Costs are limited, initially through cost avoidance measures, and, subsequent to payment of medical assistance, by requiring repayment of reimbursement to state and federal governments from the resources of a liable third party. *See,* 42 U.S.C. 1396a(a)(25), 1396a(a)(45) and 1396k; 42 C.F.R. 433.135-433.154; the

MTPLA (and the former TPL provision); and Fla. Admin. Code Rule 10C-7.0301; *see, also,* proposed Fla. Admin Code Chapter 10C-35, 17 Fla. Admin. Code 3997-4019. (Sept. 6, 1991).

In Florida, the legislative history of the MTPLA and the former TPL provision demonstrates legislative intent since 1978 to increase recovery by the state from third party resources. Legislative staff analyses since 1978 pertaining to legislative acts creating or amending the former TPL provision make no mention of intent to reduce state recovery on principles of equitable distribution or other equitable remedy.

The legislative staff analysis prepared in 1990 by the House Committee for Health Care pertaining to the MTPLA provides three primary reasons the legislature passed the MTPLA. The legislature intended (i) expressly to correct problems and significant monetary losses expected to result from the *Underwood* decision; (ii) to bring the former TPL provision into closer compliance with federal requirements, in that the federal government requires that where third-party benefits are discovered, the state Medicaid agency must recover the full amount paid and must return the federal share to the federal Health Care Financing Administration; and (iii) to clarify the historic intent of the Legislature as to full recovery by the state. The staff analysis stated that the language of the MTPLA "clarifies the intent of the legislature (revised 1978, 1982, and 1986) to assure full recovery of Medicaid payments by the state from third party resources, when they are discovered or become available."

In subsection (1) of the MTPLA, the Florida Legislature expressly states its intent as to third-party liability:

It is the intent of the Legislature that Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are discovered or become available after medical assistance has been provided by Medicaid, *it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program or entity.* Medicaid is to be repaid in full from, and to the extent of, any third party benefits, *regardless of whether a recipient is made whole or other creditors paid.* Principles of common law and equity as to assignment, lien and subrogation are to be abrogated to the extent necessary to assure full recovery by Medicaid from third party resources. *It is intended that if the resources of a liable third party become available at any time, the public treasury*

202

*should not bear the burden of medical assistance to the extent of such resources.* § 409.910(1), Fla. Stat. (emphasis added).

 With the MTPLA, the legislature ratified the Department's construction of the former TPL provision in that, under the MTPLA, the Department has multiple independent rights of recovery, which are to be construed together to provide the greatest recovery to the state from third party resources, without reduction based on equitable remedies. With one exception, not applicable in this case, the Department is entitled to full recovery of reimbursement under the MTPLA.

"Subsequent legislation declaring the intent of an earlier statute is entitled to great weight." *Red Lion Broadcasting Co. v FCC,* 395 U.S. 367, 380-381, 23 L.Ed.2d 371, 383, 89 S.Ct. 1794 (1969). While an administrative statutory construction should normally be followed, this is especially true when the legislature refuses to alter the administrative construction, and even more so when the legislature ratifies it with positive legislation. *Red Lion Broadcasting Co., supra,* 395 U.S. at 381-382, 23 L.Ed.2d at 383-384.

The enactment of the MTPLA provided legislative ratification of the Department's administrative construction of the former TPL provision. Having been ratified by the legislature, the department's construction of the statute is entitled to great weight and should be followed unless clearly wrong. Not only is the statutory construction not clearly wrong, but it clearly complies with federal interpretations of governing federal law requiring full reimbursement to the state Medicaid agency and federal government from amounts paid or payable by liable third parties, as discussed more fully below.

 The MTPLA substantially reenacted the former TPL provision, eliminating equitable remedies used to reduce recovery by the state. Not only the subrogation right, but the statutory assignment and lien have survived reenactment, with the express elimination of any equitable remedy against full recovery by the state. These reenacted rights have continued as an existing general policy, having ongoing operation, with more limited remedies available against the rights. *See, McKibben v Mallory,* 293 So.2d 48, 53-54 (Fla. 1974). The MTPLA amended and cured defects in the former statute. *Id.* at 55.

"While statutory changes in law are normally presumed to apply prospectively, procedural or remedial changes may be immediately applied to pending cases . . ." *Heilman v State,* 310 So.2d 376, 1377 (Fla. 2d DCA, 1975). "If a statute is found to be remedial in nature, *it can and should be retroactively applied* in order to serve its intended purposes." *City of Orlando v Desjardins,* 493 So.2d 1027, 1028 (Fla.

203

1986) (emphasis added). "By definition, a remedial statute is one which confers or changes a remedy; a remedy is the means employed in enforcing a right or in redressing an injury." *St. John's Village I, Ltd. v Dept. of State, Division of Corporations,* 497 So.2d 990, 993 (Fla. 5th DCA 1986).

Under governing law, any remedy of equitable distribution against the Department in cases pertaining to third-party liability has been eliminated since the date the MTPLA became effective, July 3, 1990. Each provision of the MTPLA which eliminated equitable remedies is remedial in nature, and applies to cases pending as of the effective date of the MTPLA.

■ Under § 409.910(6)(a), Fla. Stat. (enacted after the *Underwood* opinion), the Department is automatically subrogated to the rights of the recipient for the full amount of medical assistance paid by Medicaid. Equities of a recipient cannot, under present statute, reduce or prorate recovery by the Department as to the rights to which the Department is subrogated. Statutory subrogation under the MTPLA, unlike equitable subrogation, is analogous to a right of reimbursement, in that the conditions precedent for equitable subrogation need not be met in order for full recovery to be required. *See, e.g., Riera v Finlay Med. Centers HMO Corp.,* 543 So.2d 372 (Fla. 3d DCA 1989).

■ In light of the doctrine of law of the case, this Court declines to make a determination either as to recovery of reimbursement under the subrogation right or as to the applicability of the current subrogation provision to the present case. Issues as to subrogation were the only issues on appeal in the *Underwood* case. Without violating the doctrine of law of the case, this Court may determine the state's entitlement to recovery of reimbursement based on the issue of statutory assignment. Statutory assignment was neither an issue on appeal nor was it an issue determined by the District Court of Appeal.

■ Both federal and state law mandate an assignment by an applicant or recipient to the state Medicaid agency as a condition of eligibility for Medicaid. SSA § 1912 (42 U.S.C. § 1396k); 42 C.F.R. § 433.145-146; § 409.910(6)(b), Fla. Stat., § 409.266(4)(c), Fla. Stat. (1989) (repealed). While state participation in Medicaid is optional, once a state decides to participate, it must comply with federal requirements. *Harris v McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980); *Wilder v Va. Hospital Assn.,* 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); *Colo. Health Care Assn. v Colo. Dept. of Social Services,* 842 F.2d 1158, 1164 (10th Cir. 1988). Federal regulations require, as a condition of eligibility, that a Medi-

caid recipient assign his rights to third party payments to the state Medicaid agency and to cooperate with the state Medicaid agency in obtaining such payments. 42 C.F.R. §§ 433.145-433.148, 433.154. Federal regulations set forth the manner in which third party collections must be distributed, with the state to receive an amount equal to the state Medicaid expenditures, the federal government to receive the federal share, and the recipient to receive any remaining amount. 42 C.F.R. § 433.154.

Under the federally mandated assignment, when a recipient has assigned his rights to the state, the recipient has no rights of recovery to any amount from a liable third party until the state Medicaid agency has recovered the amount Medicaid has expended on his behalf. *See, generally,* 42 C.F.R. § 433.154. The federal Health Care Financing Administration ("HCFA") has construed § 1912(b) of the SSA and 42 C.F.R. § 433.154, to the effect that "[i]n liability situations, the Medicaid program must be fully reimbursed before the recipient can receive any money from the settlement or award." *State Medicaid Manual,* HCFA Pub. 45-3, § 3907, Transmittal No. 40 (Feb. 1990), MEDICARE & MEDICAID GUIDE (CCH), paragraph 14,749. Absent a showing that HCFA's construction of the federal statute is clearly wrong, and in light of the Department's corresponding construction of state and federal law, the Florida Legislature's reenactment of the former TPL provision as the MTPLA and the legislature's ratification of the Department's construction of governing law, this Court is not only required to uphold the Department's construction of the statutory assignment provision, but endorses and adopts it as consistent with the intent of Congress and the Florida Legislature to avoid additional public expense when a third party is legally liable to pay. *See, Red Lion Broadcasting Co., supra,* 395 U.S. at 380-382, 23 L.Ed.2d at 383-384; *State ex rel Biscayne Kennel Club v Board of Business Regulation,* 276 So.2d 823 (Fla. 1983).

In a Medicaid case, just as in a Medicare case, "[i]t would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages from a tortfeasor and pocket the windfall." *Holle v Moline Public Hospital,* 598 F. Supp. 1017 (C.D. Ill. 1984), quoting *Gordon v Forsyth County Hospital Authority,* 409 F. Supp. 708 (M.D.N.C. 1976).

Under the state and federal statutory assignment, the Department is entitled to full recovery of reimbursement prior to any person or entity except Medicare. The Medicaid assignment vests in the Department any right a recipient has to recovery from a third party. The

**205**

Medicaid assignment is absolute, vesting in the Department whatever right, title and interest the recipient has to recovery from a third party, totally divesting the recipient of any interest therein except for amounts in excess of the total medical assistance after full recovery by the state. § 409.910(1) and (6)(b), Fla. Stat.; SSA § 1912 (42 U.S.C. § 1396k); 42 C.F.R. §§ 433.145-433.146, 433.154. In the present case, under the statutory Medicaid assignment, the Department has a vested right to full reimbursement of the amount paid by Medicaid, i.e., $66,878.40, from the proceeds of this case. By applying for or receiving medical assistance, as a matter of state and federal law, Plaintiff automatically assigned her cause of action and proceeds from the cause of action to the state. By state and federal law, Plaintiff, as a result of her assignment, has no right, title or interest in any proceeds of the present case until the Department has recovered the full amount of medical assistance that the Medicaid program has expended on her behalf, $66,878.40.

■■■ In light of the hold harmless agreement which the parties entered between the date of issuance of the *Underwood* opinion and the enactment of the MTPLA, notwithstanding the Department's statutory entitlement to full recovery, the Department's actual recovery has a cap of $7,643.05. Although entitled by statute to recovery of $66,878.40, the Department is contractually limited to recovery of $7,643.05 from the proceeds of this case. Accordingly it is hereby

ORDERED and ADJUDGED that the Department is entitled by state and federal statute and regulation to reimbursement of the full amount of medical assistance provided by Medicaid, $66,878.40, but, pursuant to prior agreement between Plaintiff and the Department, Plaintiff is held harmless for any amounts in excess of $7,643.05, and, accordingly, the Department shall receive $7,643.05 from the proceeds of this cause of action. It is further ORDERED that Plaintiff's motion for equitable distribution is denied.

DONE and ORDERED at Sebring Florida on this 8th day of November, 1991.