639 So.2d 1038 (1994)
Lemuel B. MAGSIPOC, as personal representative of the Estate of Loraine Magsipoc and Lemuel B. Magsipoc and Estralita Magsipoc, individually, Appellant,
v.
Ralph LARSEN and Maria Larsen, his wife, Appellees.
No. 92-2562.
District Court of Appeal of Florida, Fifth District.
July 8, 1994.
*1039 Robert M. Moletteire of Reinman, Harrell, Graham, Mitchell & Wattwood, P.A., Merritt Island, for appellants.
Susan M. Seigle of Foley & Lardner, West Palm Beach, for intervenor/appellee, Boston Mut. Life Ins. Co.
No appearance, for appellees Ralph and Maria Larsen.
W. SHARP, Judge.
Lemuel Magsipoc, as personal representative of the estate of Loraine Magsipoc, and Lemuel and Estralita Magsipoc, individually, appeal from the trial court's order of equitable distribution, which prorated a portion of the funds they received in settlement of their daughter's wrongful death suit, to Boston Mutual Life Insurance Company. Boston Mutual, the Magsipoc's group health insurer, had paid all the medical costs and expenses (totalling $472,000.00) incurred for their daughter, Loraine, who nearly drowned in *1040 the Larsens' pool at their residence, and later died. The issue in this case, which is one of first impression in this state, is whether or not section 768.76 (part of the 1986 Tort Reform Act) is applicable under the facts and circumstances of this case. We think it may well be, and we remand for further proceedings.
The facts in this case are not in dispute. On August 1, 1990, Estralita Magsipoc took her two young children to the Larsens' residence to swim in the Larsens' pool. Only Mrs. Larsen was home at the time. She told Estralita she could not watch the children that day because she was busy preparing for company that evening. Mrs. Larsen did not know how to swim, and there was no lifesaving equipment, like ropes and rings, at the pool. Estralita also could not swim and she told Mrs. Larsen that fact.
Estralita had her two children swimming in the pool with water-wings. She went into the house for a few minutes and spoke with Mrs. Larsen's mother. When she returned, her four-year-old daughter, Loraine, was drowning. The child was apparently in the deep end of the pool and neither Estralita nor Mrs. Larsen was able to reach her.
Mrs. Larsen and Estralita called for help. Mr. Larsen happened to return home. He pulled Loraine out of the pool and began lifesaving procedures. Paramedics arrived and were able to get Loraine's heart pumping again.
Loraine was taken to a local hospital, Holmes Regional Medical Center. She was rushed from there to the Arnold Palmer Hospital for Women and Children, a division of Orlando Regional Medical Center in Orlando. Later, she was taken to Miami Children's Hospital in Miami. Despite heroic medical efforts and the most advanced technology medicine had to offer, Loraine died on August 31, 1990.
Boston Mutual, Lemuel Magsipoc's health insurer (through his employment), paid all of Loraine's medical costs and expenses. They totalled $472,513.70. Thereafter, the Magsipocs sued the Larsens on behalf of themselves and the estate of their daughter for having negligently caused Loraine's death.
Boston Mutual was permitted to intervene in the suit to protect its subrogation rights. The Magsipocs' insurance contract with Boston Mutual provides:
If an employee or dependent covered under this Plan incurs expenses in connection with treatment of an injury, sickness, disease or other condition caused by the negligence or wrongful act of a third party, this Plan shall be subrogated to such individual's rights or recovery against the third party to the extent of any and all payments made for such injury, illness, disease or condition, and the employee or his appropriate agent shall execute all papers and take all action necessary and proper to secure the Plan the right of subrogation. Any such right of subrogation or reimbursement provided to the Company under this policy shall not apply or shall be limited to the extent that the Florida Statutes or the courts of Florida eliminate or restrict such rights. (emphasis supplied)
After mediation, the lawsuit against the Larsens was settled for $150,000.00, but the intervenor's claim was left unresolved. The Larsens had a homeowners insurance policy with a $300,000.00 maximum coverage. The parties agreed the Larsens were essentially judgment proof, and the maximum recovery in this case would have been $300,000.00.
Boston Mutual filed a lien against the settlement. To resolve whether Boston Mutual was entitled to receive any portion of the $150,000.00 settlement proceeds, the Magsipocs filed a motion for equitable distribution in the circuit court. The court held a hearing at which expert testimony was given and the parties' attorneys made various admissions and agreements. One was that the court could make evidentiary findings, based on the hearing.
Regdon, the Magsipocs' expert witness, testified that the case against the Larsens was a weak one, based on facts to establish their liability. He said the medical expenses and costs in this case were much greater than in most child death cases. He said the $472,000.00 was a "significant factor" and would be the "floor" of a recovery in this case. He said non-economic damages for the *1041 death of a young child in Florida ranges from $900,000.00 to $1,000,000.00.
After reviewing the depositions and other evidence in this case, the court found that the Magsipocs' total damages, had there been no problem with liability or recovery, would have been $1,500,000.00, which included the $472,000.00 in medical expenses and costs paid by Boston Mutual. The parties agreed that the attorney's fees and costs incurred by the Magsipocs totalled $66,600.00, leaving a net recovery of $84,500.00.
Based on these findings the court applied section 768.76(4), Florida Statutes (1991), and prorated a share of the settlement for Boston Mutual. It calculated that the $472,000.00 paid by Boston Mutual was thirty-one percent of the total potential damages suffered by the Magsipocs ($1,500,000.00). It then multiplied the net recovery ($84,500.00) by .31 and determined that Boston Mutual's prorata share of the net recovery was $26,588.77. But, it made no express findings that any part of the $150,000.00 settlement represented recovery of medical costs and expenses.
Section 768.76 provides:
Collateral Sources of Indemnity
(1) In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, ... there shall be no reduction for collateral sources for which a subrogation right exists....
(2) For purposes of this section:
(a) "Collateral sources" means any payments made to the claimant, or made on his behalf, by or pursuant to:
* * * * * *
2. Any health, sickness or disability insurance .. .
3. Any contract or agreement or any group, organization, partnership, or corporation to provide, pay for or reimburse the costs of hospital, medical, dental, or other health care services.
(4) A provider of collateral sources that has a right of subrogation shall have a right of reimbursement from a claimant to whom it has provided collateral sources if such claimant has recovered all or part of such collateral sources from a tortfeasor. Such provider's right of reimbursement shall be limited to its prorata share of collateral sources provided, minus its prorata share of costs and attorney's fees incurred by the claimant in recovering such collateral sources from the tortfeasor. In determining the provider's prorate share of those costs and attorney's fees, the provider shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement, which is the costs and attorney's fees. (emphasis supplied)
The Magsipocs argue that Boston Mutual has no subrogation rights to the net settlement obtained from the Larsens because they did not recover the full amount of their loss, in addition to the medical costs and expenses. In this case, that sum would be $1,500,000.00 less $472,000.00, or $1,028,000.00. Their position in this case is that until they recover $1,028,000.00, Boston Mutual has no subrogation rights. Boston Mutual argues section 768.76 entitled them to prorata subrogation even though the Magsipocs did not recover the total amount of their non-economic damages.[1]
This is a case of first impression in this state, and a difficult one. The issue, as we see it, is whether the Florida Legislature, by promulgating section 768.76, intended to create a right of prorata subrogation for collateral source providers when the injured party has not received the full amount of other kinds of damages required to make it whole and whether, under the circumstances of this case, some of the recovery can be deemed recovery of medical costs and expenses.
The general rule in Florida,[2] as well *1042 as other jurisdictions,[3] is that no common law right of subrogation exists for an indemnitor who has fully paid its required sums under an insurance contract to its insured, where the insured has not recovered the total amount of damages, and cannot be said to have been "made whole." If a full recovery is had by the insured, any additional payments to the insured above and beyond its total loss, may be viewed as a "double recovery," thus "equitably" entitling the insurer to subrogation.[4] In order to alter that common law rule, a statute must be clear and express.[5]
In this case, Boston Mutual's health policy gave subrogation rights "to the extent of any and all payments made for such injury," allowable under Florida law. Thus recovery of any medical costs or expenses by the Magsipocs would trigger Boston Mutual's subrogation rights under the contract, since Boston Mutual paid all of those expenses in full.
Section 768.76(4) expressly contemplates a prorate recovery for the collateral source provider where the tortfeasor pays only part of the injured party's medical costs and expenses, and the insurer's payment under its contract, plus the recovery from the tortfeasor, do not cover the total amount of the insured's medical costs and expenses. The statute says prorate subrogation is allowed "if such claimant has recovered all or part of such collateral sources." The statute also makes irrelevant the fact that the injured party may not have been fully compensated for other kinds of damages, if that party has recovered any sums attributable to medical costs and expenses paid for by the collateral source provider. Similar statutes in this jurisdiction have been interpreted to allow a prorata recovery under those circumstances.[6]
The problem in this case, however, is that the settlement recovered by the Magsipocs fails to designate any sum as specifically attributable to medical costs and expenses. Had this case been tried before a judge or jury as a fact-finder, those allocations would most likely have been made. Or, the parties could have expressly agreed in the settlement that a portion of the recovery was for medical costs and expenses.
Florida courts allow insurance companies to intervene in a lawsuit to protect their subrogation rights.[7] A collateral source provider who intervenes is in a position to require a special verdict to protect its interests. In such a case, proration would follow under section 768.78, based on the special verdict determination or a settlement designating that the insured recovered some funds for medical costs and expenses. Where there is a general verdict, however, and the injured party has not been fully compensated for all of its damages, in addition to medical costs and expenses, the right of a collateral source provider to prorate some part of the net undifferentiated recovery pursuant to *1043 section 768.76(4) is not clear.[8] The common law rule likely would apply.
In this case, the settlement can be viewed as undifferentiated, similar to a general verdict. Boston Mutual, who had intervened in the underlying tort suit, presumably was in a position to have held up the settlement by refusing to sign off on releasing the Magsipocs until a certain portion of the recovery was specifically allocated to medical costs and expenses.[9] The question in this case is whether it had to do so to protect its subrogation rights. To require such action on the part of Boston Mutual and other collateral source providers would force them to veto settlements which do not protect their subrogation rights. This would mandate litigation rather than settlement of lawsuits. That sort of stalemate is the ultimate result of such a holding, as is illustrated by Eastwood v. Glens Falls Insurance Co., 646 S.W.2d 156 (Tenn. 1983).
A preferable middle ground is to empower the trial court as a fact-finder to determine what portion (if any) of the settlement is fairly allocable to medical costs and expenses in the equitable distribution proceeding. See Aetna Life Insurance Co. v. Martinez, 7 Ohio App.3d 178, 454 N.E.2d 1338 (1982). The parties in this case stipulated that the trial judge could make all necessary fact findings in order to enter an order of equitable distribution pursuant to section 768.76(4). However, the court failed to specifically find what (if any) portion of the settlement represented recovery for medical costs and expenses.
In this case the expert witness said $472,000.00 in medical expenses was the "floor" amount of any damage award. The pain and suffering claim of Loraine's parents was valued at $900,000.00 to $1,000,000.00. These figures have support in recent Florida child death cases. See Grayson v. United States, 748 F. Supp. 854 (S.D.Fla. 1990), reversed in part, vacated in part, 953 F.2d 650 (11th Cir.1992). The trial judge valued the Magsipocs' non-economic damages at $1,000,000.00.
The trial judge assumed these findings required proration, pursuant to section 768.76. However, proration and allocation to the collateral source provider is not required by section 768.76, when an injured party receives an undifferentiated recovery. To make that section applicable, and alter the common law rule, the fact-finder (judge or jury) must expressly find that a portion of the injured party's recovery is attributable to medical costs and expenses paid for by the collateral source provider. Since the equitable distribution order in this case lacks such an express finding, we remand this cause for further proceedings consistent with this opinion.
REVERSED and REMANDED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] Although not addressed in the equitable distribution hearing, the Magsipocs might also have recovered funeral and burial expenses. § 768.21(4), Fla. Stat. (1991).
[2] Rubio v. Rubio, 452 So.2d 130 (Fla. 2d DCA 1984); Florida Farm Bureau Ins. Co. v. Martin, 377 So.2d 827 (Fla. 1st DCA 1979).
[3] Ortiz v. Great Southern Fire & Casualty Insurance Co., 597 S.W.2d 342 (Texas 1980); Lyon v. Hartford Accident & Indemnity Co., 25 Utah 2d 311, 480 P.2d 739 (1971); Westendorf v. Stasson, 330 N.W.2d 699 (Minn. 1983); Mimes v. State Farm Mutual Automobile Insurance Co., 106 Wis.2d 263, 316 N.W.2d 348 (1982); Willard v. Automobile Underwriters, Inc., 407 N.E.2d 1192 (Ind. App. 1980).
[4] See Collins v. Wilcott, 578 So.2d 742 (Fla. 5th DCA 1991); Connecticut General Life Insurance v. Dyess, 569 So.2d 1293 (Fla. 5th DCA 1990), rev. denied, 581 So.2d 1307 (Fla. 1991); Government Employees Insurance Co. v. Graff, 327 So.2d 88 (Fla. 1st DCA 1976); Decespedes v. Prudence Mutual Casualty Co. of Chicago, 193 So.2d 224 (Fla. 3d DCA 1966), affirmed, 202 So.2d 561 (Fla. 1967); Smith v. Manville Forest Products Corporation, 521 So.2d 772 (La. App. 1988).
[5] See Sand Key Associates, Ltd. v. Board of Trustees of Internal Imp. Trust Fund of State of Florida, 458 So.2d 369 (Fla. 2d DCA 1984), approved, 512 So.2d 934 (Fla. 1987); Capps v. Klebs, 178 Ind. App. 293, 382 N.E.2d 947 (3d Dist. 1978).
[6] See Payless Oil Co. v. Reynolds, 565 So.2d 737 (Fla. 2d DCA 1990); Underwood v. Department of Health and Rehabilitative Services, 551 So.2d 522 (Fla. 2d DCA 1989), rev. denied, 562 So.2d 345 (Fla. 1990); American Mutual Insurance Co. v. Decker, 518 So.2d 315 (Fla. 2d DCA 1987); Reyes v. Banks, 292 So.2d 39 (Fla. 4th DCA 1974).
[7] See Blue Cross and Blue Shield of Florida, Inc. v. Matthews, 498 So.2d 421 (Fla. 1986); Southland Life Insurance Co. v. Abelove, 556 So.2d 805 (Fla. 5th DCA 1990).
[8] See Aetna Casualty & Surety Insurance Co. v. Saul, 422 So.2d 497 (La. 1982); Hartford Accident & Indemnity Co. v. Gropman, 163 Cal. App.3d Supp. 33, 209 Cal. Rptr. 468 (1984). See also Ortiz v. Great Southern Fire & Casualty Insurance Co., 597 S.W.2d 342 (Texas 1980).
[9] See Eastwood v. Glens Falls Insurance Co., 646 S.W.2d 156 (Tenn. 1983).