Ervin, Appellant, *v.* Garner et al.; Ohio Insurance Assn.,
Appellee.

(No. 69-626—Decided March 17, 1971.)

232

234

*Messrs. Lavelle & Yanity* and *Miss Helen H. Madsen*, for appellant.

*Messrs. Knell & Freehafer, Mr. George H. Knell*, and *Mr. A. Douglas Freehafer*, for appellee.

DUNCAN, J. It should be noted at the outset that the appellee's right of subrogation in this case cannot be defeated by appellant filing an amended petition to pray only for the uninsured items of loss. Appellant, at the time of the loss, had only one cause of action, and his execution of the subrogation assignment and appellee's payment of the $5,000 pursuant to the insurance policy then in force created no new cause of action in favor of the insurer. *Rush v. Maple Heights* (1958), 167 Ohio St. 221; *Hoosier Casualty Co. v. Davis* (1961), 172 Ohio St. 5, paragraph two of the syllabus as limited by paragraph three thereof; *Shaw v. Chell* (1964), 176 Ohio St. 375; *Nationwide Ins. Co. v. Steigerwalt* (1970), 21 Ohio St. 2d 87, paragraph two of the syllabus as limited by paragraph three thereof. *Cf. Holibaugh v. Cox* (1958), 167 Ohio St.

340. When appellant instituted the suit against the tort-feasors, he had the option to sue for all or for part of his damage. No matter which course of action appellant chose, the tort-feasors could properly request that appellant's subrogee be made a party to the action so that all claims of interest arising out of the single occurrence could be resolved. Civil Rule 19(A); *Holibaugh* v. *Cox, supra*; *Hoosier Casualty Co.* v. *Davis, supra*; and *Nationwide Ins. Co.* v. *Steigerwalt, supra*. The appellee was made a party to the action upon the motion of the tort-feasors' insurance carrier. Appellee is a party to the action and has asserted a claim. Thus, any rights of the appellee, under the subrogation assignment, are properly to be considered in the action.

In view of the stipulations of the parties, the dispute in this case concerns distribution of the $5,000 tendered to the trial court by the tort-feasors' insurance carrier.

The appellant argues, in essence, that certain equitable principles which operate where there is partial insurance of a loss should be in effect here. Those principles were first set forth in *Newcomb* v. *Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, a case in which there was neither a written subrogation agreement and assignment by the insured nor, upon request, cooperation in the prosecution of the lawsuit by the insurer. The result reached was that the insured realized a priority of indemnity from the proceeds of the suit against the tort-feasor.

Appellant next looks to *Peterson* v. *Ohio Farmers Ins. Co.* (1963), 175 Ohio St. 34. In *Peterson*, there was a subrogation agreement and assignment and there was some cooperation by the insurer in the recovery. The result was that the insurer was entitled to a priority of indemnity from proceeds obtained from the wrongdoer up to the amount which it had paid the insured.

The instant case is different from both *Newcomb* and *Peterson*. Here, there was a written assignment (as in *Peterson* but not *Newcomb*), but there was no cooperation (as in *Newcomb* but not in *Peterson*). Therefore, appel-

lant's argument, which favors the same result as that reached in *Newcomb*, where there was no cooperation and no assignment, does not logically follow, since the *Newcomb* facts are quite different.

In this case, no great significance can be assigned to the phrase "who has cooperated and assisted in recovering from the wrongdoer," which appears in the syllabus of *Peterson*. Appellant chooses to read that phrase as an announcement that cooperation and assistance are necessary prerequisites for the insurer's recovery. The language of the *Peterson* syllabus, quoted above, reflects the judicial tendency to limit a syllabus statement to the specific facts involved, and was not intended to be a general requirement for the insurer's recovery. This conclusion is drawn from the tenor of the entire *Peterson* opinion, and especially from the following language, at page 37:

"It seems clear that the assignment of *all* the insured's right of recovery against the third-party tort-feasor to the extent of the insurer's payment to *the insured conveyed every bit of the insured's right of recovery up to $7,814* [the amount the insurer paid the insured]. The insured's conveyance of all right of recovery up to a certain limit, *viz.*, the extent of the insurer's payment in settlement of the insured's claim, can mean only that the assignee is the owner of all the insured's rights of recovery until he is paid. The assignee * * * must have priority in payment out of the funds recovered. * * *" (Emphasis added.)

In addition, the *Peterson* case states, at page 38, that the more important distinction between *Peterson* and *Newcomb* is that there was a specific subrogation provision or assignment existing in *Peterson* which did not exist in *Newcomb*. Thus, the important distinction between *Newcomb* and *Peterson*, which caused different results, was the specific written assignment in the latter.

This view does not exhibit a lack of concern over a possible windfall to the insurer who sits back and allows the insured to pursue the action against the tort-feasor,

Obviously that could happen, but such a result should not be characterized as unfair if it is in accordance with the provisions of the policy as sold. The insured knew, or should have known, when he bought the policy that in case of any payment he would be required to assign "*all* right of recovery against any party for loss to the extent that payment * * * is made * * *." That is a specific provision of the policy. Even assuming that cooperation and assistance are prerequisites under *Peterson*, an assumption which we are not ready to concede, it appears that the instant decision requires some delineation and discussion of what is necessary to fulfill the requirement of cooperation and assistance. In *Peterson*, the cooperation and assistance consisted only of the fact that each party employed his own counsel who collaborated in conducting the litigation. In the instant case, the insurance company offered to enter the suit as co-plaintiff and requested the insured's counsel to represent it. Appellee's letter of request was not specifically answered, but in oral argument before this court appellant's counsel stated that he felt he was representing both appellant and appellee Ohio Insurance Association at the time the lawsuit was filed, and that for reasons of litigation strategy the suit was brought in the name of appellant Ervin alone.

*Newcomb* v. *Cincinnati Ins. Co., supra* (22 Ohio St 382), involved refusal of the insurer to cooperate *after request*. Here, the insured failed to communicate after an offer of cooperation was extended by appellee. After an appraisal of the pragmatics of a trial, an insured may conclude that the presence of an insurance company as a party is disadvantageous to his desired result, and for that reason shun the insurer's cooperation. In such a case, the insurer would then be relegated to some form of unilateral assistance—a basically inequitable result. To conclude that the controlling fact is the insurer's actual lack of cooperation, and not his refusal to cooperate, would be to ignore the willing insurer's plight.

Appellant contends further that the terms of the ex-

ecuted subrogation assignment have been supplemented by the cover letter returning that form to the appellee. He argues that the cover letter asserted a prior claim to the first $5,000 recovered; that the appellee paid his claim without objection to the terms of the letter; that the terms specified in the letter are a part of the assignment contract between the insurer and the insured; and that the terms contained in the letter control over the printed provisions of the assignment form. We do not agree.

The language of the subrogation form signed by appellant is clear and unambiguous in stating that: "The undersigned hereby assigns and transfers to the said association *each* and *all* claims and demands * * * to the extent of the amount above named * * *." (Emphasis added.) We fail to see how the insured can specifically assign *each and all claims and demands* to the insurer concerning the single cause of action, limited only by the monetary amount which the insured has paid, and yet still retain any part of his claim or demand.

We also find unpalatable the proposition that one may alter the terms of what one agrees to in signing a subrogation agreement by a cover letter setting forth terms that are contradictory or limiting. In contracting for the policy itself, appellant agreed to grant appellee full rights of subrogation; which agreement was reaffirmed by his signature on the unaltered assignment form. Further, it would be highly illogical to hold that the appellee accepted the incorporation of the terms of the cover letter into the agreement by tender of the $5,000 on the policy.

Generally, inadequacy of consideration will not invalidate a contract. *Judy* v. *Louderman* (1891), 48 Ohio St. 562, paragraph two of the syllabus. See, generally, 17 Corpus Juris Secundum 843 and 846, Contracts, Sections 127 and 128. Cases of contractual interpretation should not be decided on the basis of what is "just" or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may

benefit from the work. Where various written documents exist, it is the court's duty to interpret their meaning, and reach a decision by using the usual tools of contractual interpretation (*e. g.*, the written documents, the intent of the parties, and the acts of the parties) and not by a determination of what is fair, equitable, or just.

We are mindful that the judgment of the Court of Appeals included an award of attorney fees to appellant's counsel; however, inasmuch as the appellee took no appeal from that judgment, the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STERN and LEACH, JJ., concur.

SCHNEIDER and HERBERT, JJ., concur in the judgment.

SCHNEIDER, J., concurring. Instead of asserting that the subrogation contract was unconscionable (see *Cantor* v. *Berkshire Life Insurance* [1960], 171 Ohio St. 405; *Sheehy* v. *Seilon* [1967], 10 Ohio St. 2d 242, wherein contracts were judicially nullified on the ground of undue advantage), and what I believe to be an equitable claim that the loss be shared proportionately between him and appellee, appellant pursued a strategy calculated to capture the entire proceeds of the culprit's insurance for himself. For this reason, I concur in the affirmance of the judgment of the Court of Appeals.

But, I do not read the court's opinion as strengthening the vitality of *Peterson* v. *Ohio Farmers* (1963), 175 Ohio St. 34, or as settling the question of proration of the loss in a situation like the instant one. That question must now await a case in which it is directly presented and argued.

HERBERT, J., concurring. I concur in the judgment reached by the majority because, in oral argument, it was conceded that at the time the present lawsuit was filed be-

241

low, appellant's counsel was representing both appellant and the appellee insurance carrier. By letter, the carrier had requested appellant's counsel to assume this role.

To me, the letter coupled with counsel's undertaking the requested representation was sufficient to constitute a reasonable effort by the insurance carrier to both cooperate and assist in the recovery of the disputed funds.

As I view the combined impact of *Peterson* and *Newcomb,* equity and the facts of this case required the carrier's reasonable effort to both cooperate and assist in the recovery of these funds.