Aetna Life Insurance Company,
Appellee, *v.* Martinez, Appellant.

(No. 81AP-646—Decided May 6, 1982.)

*Wiles, Doucher, Tressler & Van Buren Co., L.P.A.,* and *Mr. Thomas J. Keener,* for appellee.

*Charles Roger Andrews Co., L.P.A.,* and *Mr. Charles Roger Andrews,* for appellant.

Whiteside, P.J. Defendant appeals from a judgment of the Franklin County Court of Common Pleas and raises a single assignment of error, as follows:

"The trial court erred in holding that plaintiff is entitled to be reimbursed first and completely for the medical payments which it made to Defendant under the Group Health Insurance Policy."

By this action, plaintiff Aetna Life Insurance Company seeks reimbursement from defendant of $31,920.94 it paid to defendant under a group life and health insurance policy for medical expenses incurred by her as a result of an automobile accident. The case was tried to the referee, who recommended a judgment for plaintiff, and the trial court overruled defendant's objections to the referee's report and recommendation and accepted and approved same and entered judgment accordingly.

There appears to be no objections to the referee's finding of fact that, with participation of plaintiff in negotiations, defendant settled her personal injury claim as a result of the automobile accident for $200,000, even though the value of her case was $1,000,000, because of limited insurance coverage by the tortfeasor who apparently had no independent means of paying a judgment.

Plaintiff contends, and the referee and trial court found, that under the terms of the insurance policy as well as a reimbursement agreement executed by defendant in connection therewith, plaintiff has a right to full reimbursement for payments made for defendant's medical expenses from the settlement proceeds. A portion of those proceeds were placed in

escrow, and the remainder was paid to defendant. Conversely, defendant contends that plaintiff is entitled to no part of the settlement proceeds and, even if entitled to share in the settlement proceeds, it should be on a pro rata basis.

Plaintiff, and the referee, relied upon two Ohio Supreme Court cases: *Peterson* v. *Ohio Farmers Ins. Co.* (1963), 175 Ohio St. 34 [23 O.O.2d 311], and *Ervin* v. *Garner* (1971), 25 Ohio St. 2d 231 [54 O.O.2d 361]. The *Peterson* syllabus states as follows:

"Where the policy subrogation provisions and the subrogation assignment to the insurer convey all right of recovery against any third-party wrongdoer to the extent of the payment by the insurer to the insured, an insurer, who has cooperated and assisted in recovering from the wrongdoer, is entitled to be indemnified first out of the proceeds of such recovery."

*Peterson* was predicated strictly upon interpretation of contractual language. *Ervin,* however, was predicated upon equitable principles and held that an insured who, in effect, refuses cooperation and assistance from the insurer in collecting from the wrongdoer is not entitled to be first indemnified out of proceeds of the recovery. *Ervin* distinguished both *Peterson* and the earlier case of *Newcomb* v. *Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, in which it was held that a noncooperating insurer, relying upon common-law subrogation, is entitled only to that portion of a recovery by the insured from the wrongdoer which exceeds his uncompensated loss and expenses of recovery.

Although defendant has contended that plaintiff is entitled to no participation, plaintiff did cooperate in the action and negotiations and, accordingly, is not precluded from participation under either common-law or contractual subrogation. Unfortunately, the referee's report contains no specific discussion of the actual provisions of the policy or the reimburse-ment agreement as to subrogation rights of plaintiff. The provision of the group policy apparently relied upon by plaintiff is set forth at pages 6-2-ELP of the policy, and provides as follows:

"If the employee or a dependent is injured through the action or omission of another person, the Insurance Company will provide the benefits of this Plan on condition that the Employee, and the dependent, if that is the injured person, will agree in writing to reimburse the Insurance Company to the extent of benefits provided, immediately upon collection of benefits payable under the insurance of such other person."

While such language is not entirely clear as to the type of insurance benefits received under another person's policy to which it is applicable, the reimbursement agreement, executed by defendant in connection with receiving benefits from plaintiff, makes it clear that it is applicable to the situation herein involved. Such reimbursement agreement reads in pertinent part as follows:

"In consideration of the payment to me * * * of any benefits for accidental bodily injuries * * * from Aetna Life Insurance Company, I agree * * * that a first lien shall exist, to the extent of all benefits paid under said group insurance policies, in favor of Aetna Life Insurance Company, upon all sums of money recovered from any third person. I further agree to reimburse said Aetna Life Insurance Company for all benefits so paid in the event of recovery, from any third person legally responsible for said injuries * * * to the extent the net amount of such recovery is attributable to hospital, surgical, and medical expenses for which I have received benefits from Aetna Life Insurance Company."

The reimbursement agreement herein involved, unlike those involved in either *Peterson* or *Ervin,* contains specific language clearly importing proration of the recovery between the insurer and the insured where full recovery is not ob-

tained from the wrongdoer. The reimbursement agreement requires defendant to reimburse plaintiff only "to the extent the net amount of such recovery is attributable to" benefits received from plaintiff for medical expenses. The word "attributable" imports an intent that a less than full recovery will be prorated, rather than either party being paid first from a partial recovery. Upon appeal, plaintiff does not contest the referee's finding predicated upon evidence that full recovery would have resulted in a payment of $1,000,000 to defendant, of which $31,920.94 would represent payment for the medical benefits paid under the policy by plaintiff to defendant. However, where, as here, less than full recovery is agreed upon by the parties, including both insurer and insured, because of policy limits of the wrongdoer having no independent means of paying any judgment recovered, equity requires that the insurer and the insured share in the lesser recovery on a pro rata basis proportional to that which they would have received had full recovery been possible, in the absence of a contractual provision to the contrary. Here, the contractual provision likewise indicates that a less than full recovery should be divided pro rata between insurer and insured. In addition, the contractual provision pertains only to "net amount of such recovery." The reference to net amount necessarily implies that the apportionment between the parties shall be made only from that part of the recovery remaining after expenses are paid. In other words, the word "net" imports that expenses will be deducted from the recovery before the apportionment is made. Such expenses necessarily include attorney fees of the parties reasonably required to effect such recovery.

Accordingly, the assignment of error is well-taken in that the trial court erred in approving the referee's report which failed to take into account the language of the reimbursement agreement, as well as equitable principles. It is necessary to remand the case to the trial court for determining the proportions to be made, inasmuch as the expenses involved are not clearly ascertainable from the record. While, as we have indicated, expenses, including attorney fees, are to be deducted from the amount of recovery before apportionment, it is also necessary to deduct from the total value of defendant's claim, that is the amount that would have constituted full recovery, the amount of expenses and attorney fees that would have been expended in collecting such amount before a proper proration can be made. In other words, net amounts must be used both for the partial recovery and for full recovery in determining the proportion of recovery. In this case, there is no evidence that a larger portion of medical expenses than other damages was included in the settlement recovery.

The formula devised by the dissent is one that may be utilized for proration under proper circumstances. Under that formula, full reimbursement of the insurer for medical payments would never occur since it compares net recovery to gross full recovery. Another method of expressing that formula is that reimbursement shall be that proportion of the amount paid as net recovery bears to gross full recovery. Thus, since gross full recovery is $1,000,000 in this case, plaintiff would be entitled to fifteen percent of the amount paid, if net recovery were $150,000. This would be $4,788.04, which also is the result of multiplying $150,000 by .03192 (or 3.192 percent).

There are other formulas that could be used for proration. However, the appropriate formula must be determined by the language of the agreement, not by selection of one that may appeal to the person calculating the proration.

Defendant agreed to make reimbursement for "all benefits so paid in the event of recovery," not just for part thereof. Therefore, the formula used must be one that could result in reimbursement for all

benefits paid. The agreement further provides that such payment is to be from "net recovery." Thus, consistent with *Peterson, supra,* the agreement provides that the insurer is to be paid first out of such recovery, if there be full recovery. However, other language of the agreement connotes proration if there be less than full recovery. This means that, if there be full recovery, plaintiff will receive full reimbursement out of the net proceeds of such full recovery. A formula which never could have that result is inappropriate. The proper formula could, thus, be expressed as follows:

$$\frac{\text{Net Actual Recovery}}{\text{Net Full Recovery}} = \frac{\text{Actual Reimbursement}}{\text{Total Benefits Paid}}$$

The only known quantity at this time is total benefits paid which are $31,920.94. Assuming net recovery to be $150,000 ($200,000 less $50,000 expenses) and net full recovery to be $700,000 ($1,000,000 less $300,000 expenses), the formula would be:

$$\frac{\$150,000}{\$700,000} = \frac{\text{Actual Reimbursement}}{\$31,920.94}$$

Reimbursement then would be $6,840.05, which could be expressed as 21.4 percent of $31,920.94 or .0456 (4.56 percent) times $150,000.

A third method of proration would be to use gross recovery in both instances (.03192 times gross actual recovery), which in this case would be $6,384, which could also be expressed as twenty percent of benefits paid. However, the agreement expressly refers to "net recovery," not gross actual recovery.

Upon remand, the trial court must determine the amount of net actual recovery and net full recovery and ascertain the amount due plaintiff.

For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed
and cause remanded.*

REILLY, J., concurs.

McCORMAC, J., concurs in part and dissents in part.

McCORMAC, J., concurring in part and dissenting in part. I agree that the judgment of the trial court should be reversed. The plaintiff was not entitled to full reimbursement for payments made for defendant's medical expenses in the event of a gross recovery of less than the full value of the entire claim. As mandated by the agreement of the parties, a partial recovery is to be distributed pro rata to Aetna and its insured after subtracting expenses, including attorney fees.

I disagree slightly with the majority as to the method of prorating the recovery. In my opinion, the gross recovery, which was $200,000, should first be reduced by the expenses and attorney fees expended to effect the recovery. The attorney fees and expenses are unknown and must be ascertained upon remand. Once those expenses are ascertained, they should be subtracted from $200,000, which results in the determination of the net amount of the recovery. The net amount of recovery is then distributable to Aetna and Martinez in the ratio that each of their parts of the claim bears to the total or gross value of the claim. The gross value of the claim was found to be $1,000,000. Aetna's part of the claim, for which it is to be reimbursed, amounts to $31,920.94. The remainder of the $1,000,000, which was found to be the value of the claim, is attributable to damages incurred by Martinez, which were not paid by Aetna. Aetna's ratio of the net recovery is obtained by dividing $31,920.94 by $1,000,000 which equals .03192. The net recovery ($200,000 minus expenses) should be multiplied by .03192

in order to calculate the dollar amount due Aetna. The remainder of the net recovery should be paid Martinez.

This method of proration results in a proportional allocation of the attorney fees and expenses necessary to obtain the recovery and a proportional distribution of the net recovery according to the ratio that each of the claims bears to the full value of the claim.

There is nothing in the contract language that requires an inequitable division of expenses. The net recovery is $200,000 minus expenses and attorney fees. Presumably, the net recovery of both the insured and the insurance company is proportional to their gross interests. That is the comparison that should be made.

The formula of the dissent is supported by logic and equity and is in accordance with the agreement of the parties, which is to prorate the expenses and recovery according to the percentage that each party's loss bears to the total loss.