ERIE INSURANCE COMPANY, Appellee,

v.

KALTENBACH, Appellant.

[Cite as *Erie Ins. Co. v. Kaltenbach* (1998), 130 Ohio App.3d 542.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–429.

Decided Dec. 10, 1998.

**544**

*Nemeth, Caborn & Butauski* and *Michael J. Collins,* for appellee.

*Frank E. Todaro,* for appellant.

---

JOHN C. YOUNG, Judge.

Appellant, John J. Kaltenbach II, appeals the judgment of the Franklin County Municipal Court granting the motion for summary judgment of appellee, Erie Insurance Company, and denying Kaltenbach's motion for summary judgment.

Kaltenbach was an insured of Erie under an automobile insurance policy. The Erie policy contained the following subrogation provision:

"After we make a payment under this policy, we will have the right to recover from anyone else held responsible.

"Anyone we protect is required to transfer this right to us, and do nothing to harm this right. Anyone receiving payment from us and from someone else for the same accident or loss will reimburse us up to our payment."

On June 6, 1995, Kaltenbach was injured in an automobile accident allegedly caused by the actions of Ben Parsons. The tortfeasor, Parsons, was insured by Allstate Insurance Company. Kaltenbach received chiropractic treatments for his injury, incurring over $5,000 in medical expenses. Erie paid the medical bills

up to the maximum policy medical limit of $5,000. Without first filing a complaint against either Parsons or Allstate, Kaltenbach entered into settlement negotiations with them. Allstate offered to pay $4,462 to Kaltenbach in exchange for a release of all claims against Allstate and Parsons stemming from the accident. Kaltenbach contacted Erie, notifying it of the negotiations and proposed settlement. Kaltenbach stated that he would not himself pursue litigation against the tortfeasor because that would be too costly, and instead asked Erie to file suit on his behalf.

Erie informed Kaltenbach that it did not consent to the proposed settlement agreement. Erie also stated that it would not file suit on Kaltenbach's behalf, and reminded him that settlement and release of his claims against Allstate and Parsons would harm its subrogation rights against those parties. Thereafter, in order to protect its subrogation rights, Erie filed its own suit against Allstate and Parsons.

Still not having filed suit against Allstate and Parsons, and with the time in which to file suit running out, Kaltenbach settled with Allstate and Parsons for $4,462, releasing all of his claims against them. Erie dismissed its action against Allstate and Parsons due to Kaltenbach's settlement and release. Erie then filed suit against Kaltenbach, claiming breach of contract and demanding reimbursement for the medical payments paid under the policy. In the court below, both parties filed motions for summary judgment. The trial court denied Kaltenbach's motion and granted the motion of Erie, ordering Kaltenbach to pay Erie the settlement amount of $4,462, plus interest and costs. This appeal followed.

Appellant asserts the following assignments of error:

"I. The trial court erred to the prejudice of appellant Kaltenbach by finding that appellee is entitled to a right of subrogation.

"II. The trial court erred to the prejudice of appellant Kaltenbach in failing to apply the full compensation rule to appellee's right of subrogation.

"III. The trial court erred to the prejudice of appellant Kaltenbach by awarding appellee more than appellant recovered for medical bills, without accounting for appellant's general damages, attorney fees and costs.

"IV. The trial court erred to the prejudice of appellant Kaltenbach in failing to apply a pro rata distribution from the net proceeds.

"V. The trial court erred to the prejudice of appellant Kaltenbach in failing to award appellant attorney fees."

Kaltenbach's assignments of error are interrelated and will be addressed together.

Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but to one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

A trial court should not enter a summary judgment if it appears material facts are genuinely disputed, nor if, construing the allegations most favorably towards the nonmovant, reasonable minds could reach different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314–315. An appellate court reviews a summary judgment by the same standard as the trial court. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. The judgment of the trial court will not be reversed absent a showing that the trial court's decision is contrary to law.

The right of an insurer to be subrogated to the rights of the insured arises either from the right of conventional subrogation, that is, subrogation by agreement between the parties, or equitable subrogation by operation of law. *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358; *Travelers Indemn. Co. v. Brooks* (1977), 60 Ohio App.2d 37, 14 O.O.3d 19, 395 N.E.2d 494. Conventional subrogation is "premised on the contractual obligations of the parties, either express or implied." *Hrenko* at 121, 647 N.E.2d at 1359. Contractual subrogation clauses in an insurance policy are controlled by contract principles, including those of interpretation of the contract language. *Nationwide Mut. Fire Ins. Co. v. Sonitrol, Inc. of Cleveland* (1996), 109 Ohio App.3d 474, 482, 672 N.E.2d 687, 691–692. Words in an insurance policy "must be given their plain and ordinary meaning." *Hrenko* at 122, 647 N.E.2d at 1360. If a policy is ambiguous, the language will be liberally construed in favor of the party insured under it. *Id.*

Here, the language of the policy agreement between Kaltenbach and Erie is plain and unambiguous. Under the policy, Erie reserved the right to pursue an action for recovery from anyone responsible for injury to the insured. The insured promised not to harm the recovery rights of Erie against the third parties who were deemed responsible for the injury. Under the provisions of the

policy, Kaltenbach had to transfer his rights of recovery against Allstate and Parsons to Erie. Additionally, Kaltenbach was obligated to reimburse Erie for Erie's payments made to him out of any recovery gained from a third party, based on the same accident or loss.

An insurer-subrogee cannot succeed to or acquire any right or remedy not possessed by its insured-subrogor. *Chemtrol Adhesives, Inc. v. Am. Mfgrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624. Once Kaltenbach settled, he released his rights to claim injury against Allstate or Parsons. Kaltenbach's release extinguished all recovery or remedy rights he had against the tortfeasor, and thereby barred the subrogated recovery rights of Erie. See *Chemtrol, supra.* Therefore, by virtue of the settlement and release of his claims, Kaltenbach breached his agreement with Erie under the policy by harming its right of recovery. By the terms of the policy, Kaltenbach then was obligated to reimburse Erie for the medical payments made on his behalf, up to $5,000, out of the other accident-related payments he received. Therefore, Kaltenbach owed Erie the $4,462 he had received in settlement from Allstate and Parsons.

Kaltenbach argues that under Ohio law, his obligation to repay Erie is abated because he has not been fully compensated for his injury. This argument is without merit. An established general rule of subrogation is:

"Where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments nor seek setoff from the limits of its coverage until the insured has been fully compensated for his injuries." *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 388, 18 OBR 440, 442, 481 N.E.2d 272, 274; *Blackburn v. Hamoudi* (Sep. 18, 1990), Franklin App. No. 89AP–1102, unreported, 1990 WL 136045.

In the instant case, Kaltenbach did interfere with Erie's subrogation rights by releasing his claims against the tortfeasor without gaining Erie's consent to do so. In fact, Kaltenbach settled in spite of Erie's warning that the settlement would impair Erie's recovery rights. Therefore, the full-compensation rule set forth in *James,* does not apply. Also, the voluntary settlement by an insured of his claims against a tortfeasor, without proof to the contrary, "is persuasive evidence of the value of [the insured's] personal injury claim, and tends to prove that [the insured] was fully compensated" for his injuries. *Risner v. Erie Ins. Co.* (1993), 91 Ohio App.3d 695, 699, 633 N.E.2d 588, 590.

The "right of an insured in such a situation to retain the total sum [sought] from the tortfeasor is not an unqualified right." *Id.* The Ohio Supreme Court has held that "where the policy subrogation provisions and the subrogation assignment to the insurer convey all right of recovery against any third-party wrongdoer to the extent of the payment by the insurer to the insured, the

insurer, who has cooperated and assisted in proceedings against the wrongdoer, is entitled to be indemnified first out of the proceeds of any recovery against the wrongdoer." *Peterson v. Ohio Farmer's Ins. Co.* (1963), 175 Ohio St. 34, 38, 23 O.O.2d 311, 313, 191 N.E.2d 157, 159–160.

In the instant case, the Erie policy subrogation provisions convey the right of recovery against any third-party wrongdoer to Erie, to the extent of the payment by the insurer to the insured. Under the policy, Erie is entitled to reimbursement from the settlement amount up to $5,000 medical payments made on Kaltenbach's behalf. Kaltenbach argues that Erie is not entitled to recovery because Erie did not cooperate or assist in proceedings against the tortfeasor. However, Kaltenbach initiated no lawsuit against the tortfeasor in which Erie could participate. Further, in *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 54 O.O.2d 361, 267 N.E.2d 769, the Supreme Court held that cooperation by the insurer was not a prerequisite to the insurer being given priority, under a written subrogation agreement, to the proceeds recovered by the insured from the tortfeasor.

Kaltenbach also claims that Erie was remiss in not initiating a personal injury lawsuit on his behalf. The insurer is required to take action to protect its subrogation rights against the tortfeasor only after it receives notice that the insured has initiated an action against the tortfeasor. Kaltenbach provides no support for his assertion that an insurer must initiate a personal injury action on behalf of an insured where the insured does not himself proceed against the tortfeasor. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447.

The evidence shows that Erie advised Kaltenbach not to settle without Erie's consent. Erie initiated its own action against Allstate and Parsons in order to preserve its subrogation rights against the tortfeasor, even though no action was filed by Kaltenbach. *Id.* Therefore, to the extent that it was required and able to, Erie did cooperate and assist Kaltenbach in proceedings against the tortfeasor, thereby permitting it to be fully reimbursed for its payments under the policy.

Kaltenbach further contends that Erie should be ordered to accept a pro rata share of the settlement recovery, instead of the full amount recovered. Kaltenbach's assertion is without merit. In order for an insurer to be required to accept a pro rata share of recovery, the insurer must have first agreed with the insured to accept less than full recovery. *Aetna Life Ins. Co. v. Martinez* (1982), 7 Ohio App.3d 178, 7 OBR 224, 454 N.E.2d 1338. No such agreement to accept a pro rata share exists in the record. In fact, the record reflects that Erie advised Kaltenbach that it would accept no less than full recovery of the $5,000 paid

under the policy from any settlement received by Kaltenbach. Therefore, under the terms of the policy, Kaltenbach was obligated to repay Erie from the settlement proceeds up to the $5,000 policy maximum already paid out on his behalf.

We hold, therefore, that Erie was entitled to subrogation; that Kaltenbach was fully compensated for his injury, and even if he was not, the full-compensation rule does not apply because of Kaltenbach's interference with Erie's recovery rights; and that Erie was owed the full amount of settlement proceeds received by Kaltenbach, up to $5,000, without application of a pro rata distribution or setoff for Kaltenbach's costs in pursuing settlement. In this regard, the trial court did not err in granting summary judgment in favor of Erie and denying summary judgment for Kaltenbach.

■ Finally, Kaltenbach argues that Erie should be required to pay his attorney fees. However, Kaltenbach provides no basis for his assertion, and his fifth assignment of error is not well taken. An award of attorney fees is within the discretion of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 18 OBR 415, 481 N.E.2d 609. Kaltenbach urges that the trial court has authority under R.C. 2721.09 to award attorney fees based upon a declaratory judgment action involving an insured and insurer where the award is necessary and proper. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140; *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 160, 648 N.E.2d 488, 490–491.

■ However, the instant action is not brought under the declaratory judgment act, but is an action for recovery of damages for breach of contract. Erie's action is one to recover subrogated settlement proceeds under the terms of the insurance policy between Kaltenbach and Erie. Thus, the award of attorney fees would not be properly granted under R.C. 2721.09, and the trial court did not abuse its discretion in not awarding attorney fees to Kaltenbach. *Landis,* 82 Ohio St.3d at 342, 695 N.E.2d at 1142–1143.

For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

MASON, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

I respectfully dissent.

At issue in this case is the effect of and the enforceability of a provision in Erie Insurance Company's policy that requires:

"Anyone receiving payment from us and from someone else for the same accident or loss will reimburse us up to our payment."

Erie Insurance Company paid $5,000 in medical pay benefits to a chiropractor who had treated John J. Kaltenbach II. The value of the total claim was such that Kaltenbach chose not to sue the driver who had caused his injuries. Instead, he chose to have his attorney attempt to resolve the matter without incurring the costs of litigation. The Allstate Insurance Company, which represented the driver who was at fault, was unwilling to pay more than $4,462 to resolve the claim. Finally, Kaltenbach and his counsel accepted the sum offered. Erie then claimed the full sum offered.

First, I do not believe that Kaltenbach should be considered as having received payment of $4,462. Instead, he should be considered as having received payment of the gross amount tendered less any costs incurred in the process of acquiring the funds. In most circumstances, this would be the gross amount received less the costs of attorney fees, expert reports, court costs, and similar expenses. This interpretation of the payment received prevents Erie from collecting far more from its policyholder directly than it would have received had it pursued its subrogation rights against the tortfeasor. Under the theory pursued by the trial court, Kaltenbach receives none of the funds paid by Allstate but faces a potential liability to his attorney for the effort and funds expended to acquire the funds.

Second, on the issue of the measure of damages, Erie should not receive more money that it would have received if it had pursued litigation directly. Erie's actual damages were no more than $5,000 less the costs of recovering the $5,000 from Allstate and its insured. The breach of contract by Kaltenbach for signing a release could not have harmed Erie any more than that sum. If Allstate were correct and a court would have determined that not all of Kaltenbach's medical bills were necessary and reasonable, then Erie could have recovered less than $5,000 (reduced further yet by the costs of collecting the actual value of the claim).

Finally, the Supreme Court of Ohio has on more than one occasion, determined that policy provisions similar to the provision in the Erie policy should be enforced only where the injured party has received full and fair compensation. The Supreme Court of Ohio could decide that this policy provision is unenforceable under the circumstances. However, that determination is best made by the Supreme Court itself.

Again, I respectfully dissent.