OPINION
Defendant-appellant, Robert E. Dombroski, appeals an order of the Harrison County Common Pleas Court, Domestic Relations Division, finding him in contempt of a divorce decree.
Appellant and appellee, Joyce A. Dombroski, were married on November 29, 1986, in Flushing, Ohio. Throughout their marriage, the parties owned and operated a business known as Dombroski Trucking. The first official sign of marital discord arose in early 1997 with allegations made by appellee accusing appellant of domestic violence. On February 11, 1997, and at appellee's request, the court issued a domestic violence civil protection order. The order enumerated a variety of mandates aimed at circumscribing appellant's conduct towards appellee and maintaining the status quo of the parties' financial affairs.
On February 20, 1997, appellee filed a complaint for divorce. The next day, the court filed a journal entry ordering appellant to pay appellee temporary spousal support. The court ordered appellant to "keep current the monthly expenses and accounts payable of the parties." The court also restrained and enjoined appellant "from removing or attempting to remove marital assets located at said marital premises and from concealing, destroying, depleting, encumbering, selling or liquidating any marital asset" while the divorce action was pending.
On August 4, 1997, the parties presented to the court a negotiated settlement agreement. The court found the agreement to be fair and equitable and, on August 20, 1997, incorporated the agreement into a judgment entry and decree of divorce.
On September 9, 1997, appellee filed a post-decree motion for contempt. Appellee alleged that appellant had engaged in a course of conduct which violated orders of the court. She further alleged that appellant had made fraudulent misrepresentations during settlement negotiations resulting in an unfair and inequitable agreement. The court heard the matter on October 27, 1997. On August 3, 1998, the court filed its decision finding appellant in contempt. The court made various findings of fact and set forth a variety of remedial and punitive orders. This appeal followed.
Since each of appellant's eleven assignments of error take issue with the trial court's contempt findings, we will first address the standard of review applicable to such proceedings. A trial court's finding of contempt will not be reversed absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Lessin
(1993), 67 Ohio St.3d 487, 494. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." Inre Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138.
A reviewing court will not reverse factual findings that are supported by some competent, credible evidence. Sec. PacificNatl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20; C.E. MorrisConstr. Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. The trial court is in the best position to judge credibility of testimony because it is in the best position to observe the witness's gestures and voice inflections. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77.
Appellant alleges in his first assignment of error that:
 "THE TRIAL COURT DID NOT HAVE THE JURISDICTION TO ORDER THE DEFENDANT TO TRANSFER ONE-HALF TITLE IN HIS RESIDENCE TO HIS WIFE AND SELL THE PROPERTY AND SPLIT THE PROCEEDS WITH HIS EX-WIFE."
The divorce decree, which incorporated the parties' negotiated settlement agreement, granted appellant the parties' marital residence. In her motion for contempt, appellee asserted that appellant had failed to negotiate at arms length prior to the August 4, 1997 hearing. Specifically, appellee claimed that appellant had represented that there was approximately $34,000.00 in business debt as of the date of the hearing. Appellee asserted that this number was approximately $13,139.00 in excess of the actual business debt. Appellee argues that this misrepresentation resulted in her agreeing to accept $15,000.00 in excess business debt in return for the marital residence.
In its decision finding appellant in contempt, the trial court found that appellant had "knowingly, purposely and fraudulently misrepresented business debts to the [appellee] and the Court at the final hearing held August 4, 1997." The court also found that appellant's "fraudulent misrepresentations influenced" appellee to transfer her one-half interest in the marital residence in exchange for appellant assuming $15,000.00 of appellee's portion of the misrepresented amount of business debt.
As a sanction, the court ordered appellant transfer a one-half interest in the marital residence to appellee as tenants in common, and pay all costs of the transfer and recording of the deed. The court further ordered the parties to sell the martial residence and divide the profits equally between them.
Appellant argues that a contempt proceeding is not the appropriate mechanism to address fraudulent conduct arising in pre-divorce negotiations. Appellant argues that only a motion for relief from judgment gives the court jurisdiction to address such fraud.
Resolution of this assignment of error presents two distinct inquiries. The first is whether a contempt proceeding was the appropriate vehicle by which to address the conduct involved (i.e., misrepresentation). The second involves the propriety of the remedy fashioned by the court to address appellant's misconduct.
Contempt has been variously classified as either direct or indirect, criminal or civil. In re Carroll (1985),28 Ohio App.3d 6, 8. R.C. 2705.01
addresses direct contempt. It reads:
 "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."
R.C. 2705.02, which addresses indirect contempt, provides:
 "A person guilty of any of the following acts may be punished as for a contempt:
 "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer;
 "(B) Misbehavior of an officer of the court in the performance of official duties, or in official transactions;
 (C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;
 (D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by the officer;
 (E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of the person's recognizance;
 "(F) A failure to comply with an order issued pursuant to section 3111.20, 3111.211, or 3111.22 of the Revised Code or a withholding or deduction notice issued under section 3111.23 of the Revised Code;
 "(G) A failure to obey a subpoena issued by the department of human services or a child support enforcement agency pursuant to section 5101.37 of the Revised Code;
 "(H) A willful failure to submit to genetic testing, or a willful failure to submit a child to genetic testing, as required by an order for genetic testing issued under section 3111.22 of the Revised Code."
Though R.C. Chapter 2705 provides statutory authority, [t]he power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions. Denovchek v. Bd.of Trumbull Cty. Commers. (1988), 36 Ohio St.3d 14,15. The power is said to exist independently of express statutory law addressing contempt. Cincinnati v. Cincinnati Dist. Council 51
(1973), 35 Ohio St.2d 197, 202. Since a court has the inherent power to punish contempts, it also has the power to determine the kind and character of conduct which will constitute contempt.State ex rel. Turner v. Albin (1928), 118 Ohio St. 527, 535; Inre Ayer (1997), 119 Ohio App.3d 571, 576. In addition to R.C.2705.01, direct contempt has been defined to include "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Denovchek, supra,
at 16, quoting Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, 56. For indirect contempt, "it is necessary to establish a valid court order, knowledge of the order, and violation of it." Arthur Young Co. v. Kelly (1990),68 Ohio App.3d 287, 295.
In this case, appellants's misrepresentations did not constitute indirect contempt of court. There is no evidence or suggestion that appellant's misrepresentations violated any court order. Appellant's misrepresentations are more appropriately classified as direct contempt. Given the power to determine the kind and character of conduct which will constitute contempt, we cannot say that it was error for the trial court here to consider appellant's misrepresentations as contempt.
The second inquiry is the propriety of the court's sanction. A sanction, whether imposed for civil or criminal contempt, contains an element of punishment. Brown v. Executive 200, Inc.
(1980), 64 Ohio St.2d 250, 253. However, courts tend to distinguish civil and criminal contempt by the character and purpose of the sanction imposed. Id.
In ConTex, Inc. v. Consolidated Technologies, Inc. (1988),40 Ohio App.3d 94, 95-96, the court elaborated on this distinction as follows:
 "The purpose of criminal contempt sanctions is to vindicate the authority of the court, [Brown v. Executive 200, Inc.
(1980), 64 Ohio St.2d 250, 254, 18 O.O.3d 446, 449, 416 N.E.2d 610, 613], and to punish past acts of disobedience. [Latrobe Steel Co. v. United Steelworkers of America (C.A. 3, 1976), 545 F.2d 1336, 1343]. The penalties imposed on a criminal contemnor are unconditional, Brown, supra, 64 Ohio St.2d at 253-254, 18 O.O.3d at 449, 416 N.E.2d at 613, and may take the shape of an absolute fine for a specific amount or a determinate period of confinement. Latrobe Steel Co., supra,
at 1343.
 "The purpose of sanctions imposed for civil contempt is to coerce compliance with the underlying order or to compensate the complainant for loss sustained by the contemnor's disobedience. Punishment for civil contempt may, therefore, be either: (1) remedial or compensatory in the form of a fine to compensate the complainant for the contemnor's past disobedience; or (2) coercive and prospective, i.e., designed to aid the complainant by bringing the defendant into compliance with the order, and conditional, wherein confinement may be terminated by the contemnor's adherence to the court's order. Brown, supra."
In addition to this common law authority for contempt sanctions, R.C. 2705.05(A) sets forth statutory limitations. It provides:
 "(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:
 "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."
In this case, the trial court ordered appellant to transfer a one-half interest in the marital residence to appellee. The court further ordered that the property was to be sold and the gain divided equally between the parties. This sanction effectively modifies the distribution of property made under the divorce decree. Given the general rule that a property division may not be subsequently modified, this raises the question of whether the trial court had the jurisdiction or authority to do so in this case.
R.C. 3105.171(I) sets forth the law concerning a trial court's authority to modify a distribution of property under a divorce decree. It states:
 "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court."
Case law is in accord. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399.
In Schlueter v. Schlueter (Dec. 28, 1998), Auglaize App. No. 2-98-19, 1998 WL 901733 at *3, the Third District Court of Appeals addressed the propriety of modifying a property division order as a sanction for contempt. In that case, the trial court had punished a contemnor by ordering that his option on the parties' marital residence as contained in the divorce decree be eliminated. The court went on to hold as follows:
 "R.C. 2705.05(A) provides for the imposition of a fine or imprisonment upon one found guilty of contempt of a trial court order. Based on the trial court's judgment entry, the court's intent was clearly to eliminate the option upon the marital residence as a sanction for appellant's contempt of court. This in actuality constituted a modification of the original order granting the appellant an option, which he had chosen not to exercise in this case. However, modification of a property distribution order is not among the available sanctions listed under R.C. 2705.05(A) as punishment for contempt. We therefore find that the trial court exceeded its authority for punishment of contempt. Cf. Fry v. Fry (1989), 64 Ohio App.3d 519, 582 N.E.2d 11 (holding that a trial court exceeds its authority under R.C. 2705.05 in modifying a custody order for punishment of contempt) * * *" Id.
However, a year earlier in a reported decision, the Third District set forth possible exceptions to the no modification rule. In Proctor v. Proctor (1997), 122 Ohio App.3d 56, 59, the court observed:
 "However, it is axiomatic that construction of a contract, in this case the separation agreement, must be accomplished `so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' Id. (quoting Skivolocki v. E. Ohio Gas. Co. (1974], 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus). A party is not entitled to reparation or equity simply because he or she has made a bad bargain. A court may not rewrite an agreement simply because it believes the agreement could have or should have been written more fairly, absent evidence that the contract is in violation of [701 N.E.2d 38] public policy, or that a party was led to enter the agreement as a result of incompetency, fraud, duress, or undue influence. Ervin v. Garner (1971), 25 Ohio St.2d 231, 239-240, 54 O.O.2d 361, 365-366, 267 N.E.2d 769, 773-774; Emerick v. Armstrong
(1824), 1 Ohio 513, 1824 WL 38; see, also, Knapp v. Knapp
(1986), 24 Ohio St.3d 141, 148, 24 OBR 362, 367-368, 493 N.E.2d 1353, 1358-1359 (Celebrezze, C.J., dissenting)."
The Ohio Supreme Court has not directly addressed this issue. However, it has indicated disdain of attempts by the General Assembly to limit a court's ability to punish for contempt. InCincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197,207-208, the court observed:
 "It is * * * highly doubtful that the General Assembly may properly limit the power of a court to punish for contempt. Although it is conceded that the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control. * * * The Courts of Common Pleas are established by Section 1 of Article IV of the Ohio Constitution not by the General Assembly, and, hence, are co-equal branches of the government. Those courts are vested with the judicial power of the state, which includes the power to enforce lawful orders by contempt proceedings."
Based on the foregoing, we find that appellant's first assignment of error is without merit.
Appellant alleges in his second assignment of error that:
 "THE TRIAL COURT DID NOT HAVE THE ABILITY TO ORDER PUNITIVE DAMAGES AND THE COURT ABUSED ITS DISCRETION IN ORDERING THE DEFENDANT TO PAY $3,000.00 IN PUNITIVE DAMAGES."
Appellant argues that punitive damages are unavailable in a contempt action, citing R.C. 2315.21. R.C. 2315.21 addresses, in part, the requirements for a punitive damages award in a tort action. Before its revision in 1997, R.C. 2315.21 did not provide a tort defendant the right to have punitive damages determined by a jury. In 1994, the Ohio Supreme Court ruled that this omission in R.C. 2315.21 was unconstitutional because it violated the right to a trial by jury under Section 5, Article I of the Ohio Constitution. Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph 2 of the syllabus. Now, revised R.C. 2315.21
provides a tort defendant that right. Appellant argues that since a contemnor is not entitled to a jury trial, punitive damages are unavailable.
In Cincinnati v. Cincinnati District Council 51 (1973),35 Ohio St.2d 197, 207, a contemnor made a similar argument contending that a contempt fine exceeded the statutory limits set forth in R.C. 2705.05 and violated the right to a trial by jury under Section 5, Article I of the Ohio Constitution. The court rejected both arguments. Concerning the constitutional challenge, the court held that there is no right to a jury trial in contempt proceedings. Regarding the statutory caps on contempt fines, the court observed that the General Assembly may not properly control a court's inherent power to punish for contempt in such a manner. Id. at 207-208.
Appellant's second assignment of error is also found to be without merit.
Appellant alleges in his third assignment of error that:
 "THE TRIAL COURT ERRED IN FINDING MR. DOMBROSKI IN CONTEMPT FOR NOT IMMEDIATELY TURNING THE TRUCKS IN QUESTION OVER TO HIS EX-WIFE IMMEDIATELY."
The parties' negotiated settlement agreement as incorporated into the August 20, 1997 divorce decree provided for a division of marital business assets. Specifically, the decree granted to appellee certain business vehicles — a 1975 International Tri-axle Dump Truck, a 1982 Mack Tractor, and a 1982 Cobra Trailer.
In her motion for contempt, appellee asserted that when the parties presented the agreement to the court at the August 4, 1997 hearing, it was also agreed that appellant would provide the vehicles to appellee by August 11, 1997. Appellee stated that appellant did not turn over the vehicles until August 27, 1997. Appellee maintained that this constituted a violation of the parties' agreement and the court's order.
In its decision finding appellant in contempt, the court found that appellant had "knowingly, purposely and fraudulently refused to provide [appellee] with the 1982 Mack Tractor and 1982 Cobra Trailer, as ordered on August 4, 1997, until August 27, 1997."
It is well recognized that "[a] court speaks through its journals and an entry is effective only when it has been journalized." State v. Ellington (1987), 36 Ohio App.3d 76,77-78. Therefore, the parties' settlement agreement as incorporated into the divorce decree did not become effective until the decree was filed on August 20, 1997. Furthermore, the decree did not set forth a timetable by which each party was to transfer property to the other.
Since appellant was under no duty to provide the vehicles to appellee until after August 20, 1997, it was an abuse of discretion for the court to find that appellant had deprived appellee of the vehicle from August 4, 1997, to August 27, 1997. Given the absence of a timetable provision in the divorce decree, it is implicit that appellant had a reasonable time to provide the vehicles to appellee. Appellant provided the vehicles to appellee within seven days of the effective date of the divorce decree. Under the circumstances of this case, appellant's compliance came within a reasonable time and did not rise to the level of contempt of court.
Accordingly, appellant's third assignment of error has merit.
Appellant alleges in his fourth assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING LOST PROFITS TO BE PAID TO THE PLAINTIFF FROM AUGUST 11, 1997 THROUGH AUGUST 27, 1997 DUE TO THERE NOT BEING AN ENFORCEABLE ORDER UNTIL AUGUST 20, 1997"
In addition to finding appellant in contempt for failing to provide the vehicles to appellee by a date certain, it also found that appellant "knowingly, purposely and fraudulently used the 1982 Mack Tractor and 1982 Cobra Trailer to produce income, while leaving his own vehicles set, thereby depriving [appellee] from earning income with the use of these vehicles for the period of August 11, 1997 through and including August 26, 1997." To compensate appellee for this loss, the court ordered appellant to pay appellee a total of $5,250.00. The court stated that the total represented a loss of $350.00 income per day for the period August 11, 1997 through August 26, 1997, in which appellant deprived appellee the use of the 1982 Mack Truck and 1982 Cobra Trailer.
This finding was an abuse of discretion. The divorce decree granting appellee the trucks was not effective until August 20, 1997. Prior to that time, the trucks remained the property of the parties' business. The divorce decree contained no language or provision dealing with a division of profits earned by the business prior to the effective date of the decree. Additionally, as we found under appellant's third assignment of error, appellant provided the vehicles to appellee within a reasonable time after entry of the divorce decree.
Accordingly, appellant's fourth assignment of error also has merit.
Appellant alleges in his fifth assignment of error that:
 "THE COURT ABUSED ITS DISCRETION INCLUDING $5,000.00 IN DAMAGES FOR THE MACK TRUCK TO BE PAID BY APPELLANT."
Regarding the business vehicles, the trial court also found appellant in contempt for "knowingly and purposely causing damage to the 1982 Mack Tractor and 1982 Cobra Trailer" and that appellant "used [appellee's] 1982 Mack Tractor in a truck pull at the Monroe County Fair, subsequent to the final hearing on August 4, 1997, and prior to delivering the 1982 Mack Tractor to [appellee]." The trial court ordered appellant to pay appellee $5,000.00 for damage done to the 1982 Mack Tractor and 1982 Cobra Trailer.
At the hearing on the contempt motion, appellee testified to the following repairs made to the two vehicles:
 Tires $375.54 Drag link arm 27.57 Trailer spring 48.49 Mirror 36.53 Undetermined 0.74 -------- TOTAL $488.87
The vehicles remained part of the parties' marital business assets until the effective date of the divorce decree, August 20, 1997. Prior to that, on February 21, 1997, the court specifically restrained and enjoined appellant "from removing or attempting to remove marital assets located at said marital premises and from concealing, destroying, depleting, encumbering, selling or liquidating any marital asset" while the divorce action was pending. The $488.87 in damages detailed above was the only competent, credible evidence presented at the hearing on this issue. Consequently, to the extent that the trial court awarded damages to appellee over and above $488.87, said award was an abuse of discretion and not supported by competent, credible evidence.
Accordingly, appellant's fifth assignment of error also has merit.
Appellant alleges in his sixth assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING ROBERT DOMBROSKI IN CONTEMPT FOR NOT TURNING OVER TOYS TO HIS WIFE WITHIN SEVEN DAYS OF THE DIVORCE DECREE"
The trial court found appellant in contempt for failing to provide appellee with the Ford toy tractor, antique toy cars, Tonka toy dump truck, parts to the Honda four-wheeler, and a chicken basket. Appellant testified that he had placed the items, with the exception of the chicken basket on a picnic table, and appellee's sons retrieved the items. Appellee testified that she had not received the items. Given the conflicting testimony, we cannot say that the trial court's finding on this issue was not supported by competent, credible evidence nor did it constitute an abuse of discretion.
Appellant's sixth assignment of error is without merit.
Appellant alleges in his seventh assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING $750.00 IN ATTORNEY FEES."
In its decision finding appellant in contempt, the trial court also ordered appellant to pay appellee's attorney fees in the amount of $750.00. Appellant argues that this was error because there was no testimony presented at the contempt hearing concerning attorney fees.
The attorney representing the party seeking an award of attorney fees has the burden to introduce into the record sufficient evidence of the services performed and of the reasonable value thereof to justify reasonable attorney fees in the amount awarded. In re Estate of Verbeck (1962),173 Ohio St. 557, 559. As appellant correctly points out, there was no evidence presented in this case bearing on the issue of attorney fees or the reasonableness of such an award. Consequently, the trial court abused its discretion in awarding appellee her attorney fees.
Accordingly, appellant's seventh assignment of error has merit.
Appellant alleges in his eighth assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING MR. DOMBROSKI TO PAY PREMIUMS FOR HEALTH INSURANCE AND A TRUCK PAYMENT THAT WERE NOT PART OF THE CONTEMPT MOTION."
Appellant claims error in finding him in contempt for failing to make a premium payment for appellee's health insurance and a vehicle payment when due. He argues that neither of these issues were raised in appellee's contempt motion and, therefore, constitute a due process violation by not providing him notice of the allegations. Appellant cites Nielsen v. Meeker (1996),112 Ohio App.3d 448, which held that absent an issue being identified in a show cause motion, such an issue is not properly before the court.
On February 21, 1997, the trial court filed a journal entry ordering appellant to "keep current the monthly expenses and accounts payable of the parties." At the contempt hearing, appellee testified that appellant had not kept all of the monthly expenses and accounts payable current.
The trial court found appellant in contempt for failing to make the July, 1997 Blazer payment, the August 1, 1997 health insurance payment, and for incurring debt to 84 Lumber in appellee's name in the amount of $1,913.82 and failing to pay that debt. As a sanction, the court ordered appellant to make the payments.
Due to the February 21, 1997 order, appellant had full notice of his obligations. The lack of specificity of appellee's allegations in her motion for contempt is inconsequential. Therefore, the trial court's contempt finding was supported by competent, credible evidence and did not constitute an abuse of discretion.
Appellant's eighth assignment of error is without merit.
Appellant alleges in his ninth assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING MR. DOMBROSKI IN CONTEMPT FOR VIOLATING THE CIVIL PROTECTION ORDER AND INCURRING DEBT AT THE 84 LUMBER COMPANY."
For the same reasons set forth under appellant's eighth assignment of error, this assignment of error is without merit.
Appellant alleges in his tenth assignment of error that:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING ROBERT DOMBROSKI IN CONTEMPT FOR ALLEGEDLY SELLING MARITAL PROPERLY [sic.] PRIOR TO THE DIVORCE DECREE DUE TO THIS NOT BEING PART OF THE CONTEMPT MOTION."
For the same reasons set forth under appellant's eighth assignment of error, this assignment of error is without merit.
Appellant alleges in his eleventh assignment of error that:
 "THE COURT ERRED IN FINDING MR. DOMBROSKI IN CONTEMPT FOR INFORMING VALLEY MINING THAT THE PROFITS WERE PAYABLE TO MR. DOMBROSKI."
As indicated earlier, the divorce decree granted appellee the 1975 International Tri-axle Dump Truck. Appellee, in her motion for contempt and at the subsequent hearing on the motion, asserted that her brother had used the truck to do work at Valley Mining. She claims that appellant told Valley Mining that the truck was his and that he was entitled to payment for the work performed. Consequently, appellee maintains, Valley Mining has refused to pay her for the work performed from August 4, 1997 through August 20, 1997.
In its decision finding appellant in contempt, the trial court found that appellant had "purposely and fraudulently provided information to Valley Mining, Inc., which resulted in [appellee] being deprived of payment for work performed at Valley Mining, Inc., from August 4, 1997, through August 20, 1997." Although the trial court made this specific finding of contempt, the decision does not set forth a sanction addressed specifically to this contemptuous conduct. Implicit in the court's finding is that appellee is entitled to the payment from Valley Mining, Inc.
Appellant argues that the work performed at Valley Mining, Inc., was done by his employees and with the 1975 International Tri-axle Dump Truck while he was still entitled to it.
Appellant also points to the absence of any language in the divorce decree addressing profits or when the titles to the vehicles were to be transferred.
As appellant correctly observes, the divorce decree is silent on this issue. As we indicated under appellant's third assignment of error, the divorce decree was not effective until August 20, 1997. Therefore, the truck remained the property of the parties' business, Dombroski Trucking, until that time. Any right to payment for work performed that accrued prior to the effective date of the divorce decree was an asset of the business. Consequently, this finding of contempt amounted to an abuse of discretion.
Accordingly, appellant's eleventh assignment of error has merit.
The decision of the trial court is affirmed in part and reversed in part and this matter is remanded to the trial court for further proceedings according to law and consistent with this court's opinion.
Cox, J., concurs, Waite, J., concurs
APPROVED:
 _________________________________ Gene Donofrio Judge